## GODWIN v. ATLANTIC COAST LINE RAILROAD CO.

1. As against the defendant it was incompetent to prove that the witnesses regarded the pool as a nuisance, and had contributed to a fund to secure its abatement.

2. There were no contradictory statements, and nothing in the previous testimony of the witnesses which authorized an inquiry, on cross-examination, as to their contribution to such fund.

3. There was nothing in the pleadings requiring the judge to charge as to intervening or preponderating causes, and no request for an instruction on that subject.

4. The charge that the nuisance referred to in the declaration must be the "immediate and proximate cause" of the death of the plaintiff's husband before she could recover was not error, it being apparent that the word "immediate" was not used in the sense of "speedy," but rather in contradistinction to "remote," and as a synonym for "proximate."

5. The use of. the word "disease," instead of "malaria," in the charge of the court was not error, and not calculated to harm the plaintiff, but was in conformity.with the allegations of the petition.

6. The failure of the court to charge on the subject of expert testimony was no cause for a new trial, there having been no request for a charge on that subject.

7. The charge fully and fairly submitted all the issues presented, the evidence was sufficient to sustain the finding, and the court did not err in refusing a new trial.

Argued June 23,—Decided July 14, 1904.

Action for damages.   Before Judge Griffin.   City court of Valdosta.   February 5, 1904.

Mrs. Elizabeth Godwin brought suit against the Atlantic Coast Line Railroad Company for the death of her husband.   The petition alleged, that the defendant's predecessor, before its merger with the defendant, dug a trench or pool near the residence of the deceased; that filthy water drained into this pool and became stagnant, polluted, and poisonous, sending forth noxious and offensive odors, vapors, and smells, impregnating the atmosphere which the deceased and others at his home were compelled to breathe, and that this poisonous, unhealthy, and offensive matter often made it almost impossible to remain in the house; that the excavation likewise generated malaria and marsh gas, which, with the odors and vapors, invaded the house; from and by which he was stricken with disease resulting in his death in September, 1902, after having lingered with disease, with the foregoing as the direct cause thereof, for more than a year, until it produced his death. The evidence established the allegations as to the existence and maintenance of the pool, and the fact that the offensive odors and vapors were carried thence into the house of the deceased. There was testimony of a physician for the plaintiff that Mr. Godwin died with malarial fever, and that malaria could have been produced by the pond referred to in the petition.   One witness testified that as this pool was nearer the house, it was more natural to conclude that the malaria was caused by it than by causes more distant.   On the cross-examination of the witnesses for the plaintiff, and by testimony for the defendant, it was shown, that during the period of Mr. Godwin's sickness, there were many cases of similar illness throughout the city and at points remote from this pool; that there were other sources near his place of business and his residence, similar to the pool, by which malaria might have been caused; that the pool was about 250 feet on one side of his house, and that 400 feet from it on the other side there was an excavation into which certain refuse matter was dumped; that this was likewise very offensive; that he had been a member of

the city council and during his sickness sent for some of the city officials and stated that he regretted having voted to have this place filled, asked that disinfectants be placed therein, and stated that he believed that it was the cause of his illness. There was much testimony as to the cause of malaria, — whether it is transmitted by air currents, through water, or by mosquitoes, — all of the witnesses testifying, however, that there are various theories as to its cause, but that it is impossible to say exactly how or by what it is produced ; and as to whether it may not have been contracted from the same sources which occasioned similar diseases to persons residing in every part of the city of Valdosta during that year. The verdict was for the defendant. The plaintiff moved for a new trial, and assigned as error the refusal of the court to allow certain witnesses for the defendant, on cross-examination, to answer questions of counsel for the plaintiff, as to whether they had contributed money to have the pool abated as a nuisance; also that the court, in charging the jury as to the plaintiff's contentions, failed to charge that she contended that the death of Mr. Godwin was due to malaria, and confused the same with an instruction on the subject of vapors and odors producing disease resulting in his death ; and that the court charged that in order for the plaintiff to recover, the jury must find that these gases "were the immediate and proximate cause of his death ;" the plaintiff contending that the proximate cause need not be the immediate cause. It was also assigned as error that the court charged that if the gases causing the death originated at any other place than the excavation, the plaintiff was not entitled to recover. The plaintiff contended that if the malarial poison was a cause operating concurrently with intervening causes, but those generated in the excavation were the predominating influence among the causes producing death, she would be entitled to recover.

*W. E. Thomas* and *Wilcox & Johnson*, for plaintiff.

*D. H. Pope, Kay, Bennet & Conyers* and *Cranford & Whitaker*, for defendant.

LAMAR, J. (After stating the foregoing facts.) Whether the pool was a nuisance was a controlling point. But it was an issue to be decided by the jury and not by a witness. It would, therefore, have been clearly incompetent as against the defendant to

allow witnesses to testify that they regarded it as a nuisance, and had contributed to a fund to have it abated as such.   Nor had there been any contradictory statement, nor anything in their previous testimony which made relevant, on cross-examination, this otherwise irrelevant testimony.   Both of the witnesses admitted the existence of the pool; neither denied that offensive odors arose therefrom, but they merely stated that they had not smelled such odors.   The neighbors may have complained of the pool as a nuisance; or the witnesses may have feared that it would ultimately become one to them, and for that reason they might have contributed to the fund.   But that fact in no way contradicted their testimony that they had smelled no odors from the excavation; and the court did not err in refusing to allow cross-examination along the line suggested.

It was stated on the argument that the court had overruled the defendant's demurrer in which it was insisted that a death occasioned by the maintenance of a nuisance is not a "homicide" for which the Civil Code, § 3829, gives the widow a right of action. There was no exception filed to this judgment, and that question was not argued here.   Under the record the controlling point is whether it appears that the death of Mr. Godwin was the result of disease occasioned by malaria or vapors generated in the pool maintained by the defendant, and whether there was any error in the charge of the court on this issue.   That he died of malaria was established, but it appeared that in every part of the city, and in portions thereof remote from the pool, many other persons, at the time of Mr. Godwin's illness, suffered from the same disease.   It also appeared that in a short distance from his residence there was another excavation which likewise generated offensive odors, and that he himself thought the latter was the cause of his sickness.   The burden of proof was on the plaintiff, and, in the light of the evidence, it was proper to charge that the jury must be satisfied that the death was occasioned by causes originating in the pool and not elsewhere.   There was nothing before them by which they could determine which of the many causes in existence operated to produce this sickness, or which of these causes predominated the one over the other.   Nor was there any request that the court should charge the jury on this subject, and there was nothing in the pleadings which suggested such an issue.

The plaintiff contended that the death was due solely to causes arising from the pool. This the defendant denied, and this issue was properly submitted. Compare *Ingram* v. *Hilton & Dodge Lumber Co.*, 108 *Ga.* 144 (6).

It is assigned as error that the court instructed the jury that the nuisance referred to in the petition must have been the "immediate and proximate cause" of Mr. Godwin's death. It would have been better to have said "natural and proximate cause;" for if this charge meant that the defendant was only responsible for the immediate results of its acts, as distinguished from the consequential results, it would have been error. But in the light of the whole charge, it is clear that the jury could not have thus understood the instruction, nor that it was necessary for them to find that death "speedily" resulted from the maintenance of the nuisance, but that they understood rather that they could not find for the plaintiff if it appeared that the sickness and death had been occasioned by other nuisances in the town, or if he had died as a consequence of a cause not directly and proximately occasioned by the pool referred to in the declaration. In discussing legal causation, the phrase "proximate cause" does not necessarily mean that which is nearest, but refers rather to the efficient cause, and in this sense is sometimes referred to as the "immediate and direct" cause as opposed to "remote." And the words "proximate," "immediate," and "direct" are frequently used as synonymous. Compare *Mayor of Savannah* v. *Cleary*, 67 *Ga.* 154 (3); *Sharp* v. *Parker*, 108 *Ga.* 805; *Stevens* v. *Stevens*, 96 *Ga.* 374 (3); Civil Code, § 3911; 1 Thomp. Neg. (2d ed.) 47, 49; Webster's Int. Dic. s. v. "immediate."

The other assignments are sufficiently dealt with in the headnotes. There was no error in refusing to grant a new trial.

*Judgment affirmed. All the Justices concur.*