## STORY *v.* THE STATE.

1. Where counsel representing the defendant in a criminal case then on trial desired, after the accused had finished his statement, to make a suggestion as to some matter which had been omitted by the defendant in making the statement, he should have made a request or motion addressed to the presiding judge in open court, asking permission to make the suggestion; and where he did not do this, but made the request in a whispered conversation with the judge, and the judge refused to exercise the discretion with which he is vested to allow or refuse a request of this kind, and denied the counsel the privilege of making the suggestion, such denial will not be taken as a ruling on a motion properly made, upon which a decision of this court can be had.

2. In the absence of a request to charge upon confessions and admissions, failure of the court to instruct the jury on those subjects is not ground for the grant of a new trial.

3. The verdict was authorized by the evidence.

APRIL 12, 1916.

Indictment for murder. Before Judge Gilbert. Harris superior court. December 18, 1915.

West Story was tried for the offense of murder, it being alleged in the indictment that he unlawfully killed one Cherry Huling by shooting her with a gun. The jury returned a verdict of guilty without a recommendation, and the defendant was in due course sentenced to be hanged. He excepted to the refusal of a new trial.

The State introduced as a witness Mell Huling, the husband of the woman alleged to have been murdered, who testified that Story came to his house and inquired of witness's wife where he was; to which she replied that he was in the dining-room, bathing. Story then said: "I saw a hawk out there in the pine thicket, and I want to borrow your gun to kill it." The woman asked her husband where the gun was, and he told her. Story took the gun, and then asked the woman for a dip of snuff. She went to her trunk to get it; whereupon Story shot her in the head, and went

outdoors. When Mell Huling called to his wife she did not answer. He then inquired of Story, "What did you shoot my wife for?" Story replied, "God damn you, I will pile you all up together;" and Huling ran, as the accused turned upon him with the gun. The deceased had been shot through the head. The slayer fled towards Mr. Fletcher Hargett's house. There had been no quarrel between the decedent and the slayer.

Fletcher Hargett testified: Cherry Huling's house was about 300 yards from his house; the houses being in plain view of each other. About a minute after the gun was fired, West Story came from Huling's house. He was walking with a stick, and turned as if to raise it. He then came across the field toward witness, and, to the question who fired the shot, replied that he did. To the question why he shot on Sunday, he answered: "I killed Cherry Huling. She said my rations were out, and you know I got enough rations to do me more than a month, and I killed her." He did not stop walking, and witness told him to stop and hand him the gun. As he did not do so, witness approached him and grabbed the gun, which the accused had begun to raise.

M. F. Hargett testified, among other things, that he went to the house where Cherry Huling was, accompanied by West Story, and he asked Story if he did it, to which Story replied in the affirmative. Lula Dunlap, a colored woman, testified: "I know West Story, and knew Cherry Huling in her lifetime. The Friday before the Sunday Cherry was killed, me and West Story were in Will Porter's field, and Will Porter's wife was there with us. Will Porter's wife left the field, and West and I remained. When Will Porter's wife went home to get dinner, West Story said, 'God damn it, I would just as soon be in the penitentiary as here.' He was in one row and I in the other. I said, 'Uncle West, what is the matter?' He said, 'God damn it, when my heart hurts I get mean—West Story.' He says, 'Hold up, hold up, I am going to kill that God damn woman.' I said, 'What woman?' I thought he was going to hit me. He hoed to the end of the row; he taken off his hat, blowed, says, 'Whoo-wee. When I gets this passion, it takes something like a hunk of meat—my heart hurts.' He says, 'I am going to kill that God damn son of a bitch.' Says he, 'You done heard it, so take it home.' I says, 'West, I would not do that; if you kill that woman your pleasure will done be gone, you

will either be sent off or you will lay in jail; you can't have no pleasure here.' He says, 'I don't give a God damn.' I live within calling distance of Cherry Huling's house. She is the best friend I ever had. I have known her a very long time. It hurt me very much when I heard she was killed. Cherry was not in the field with us when Uncle West was talking. He said he was going to kill Miss Cherry, God damn her; said he was bothered."

The defendant made the following statement: "We had all been to Wash Gates's house; we went that far together; then I went on later to Mell's house. I asked her for a dip of snuff. I says, 'Cousin Cherry, give me a dip of snuff. I will give you some tobacco tomorrow. I ain't got none.' She says, 'All right,' and she gone over there to get the snuff. I seed a hawk coming. I says, 'Give me the gun.' She says, 'All right.' She handed me the gun, and I went to cock the gun, and the hammer slipped and killed the woman. I never had no malice with her. Her husband will tell you me and her never had no fuss; and so far as being in the field that day on Friday before, I can prove by Mr. Hargett I quit that Friday because I was sick. Lou Dunlap wasn't in the field, but me and Boss Adams's wife. I had not hoed none with Lou in three or four weeks, and hadn't been in the field over twice that week. And then I went out, and I gets out there, and when the shot was made afterwards Mell comes to the door and says, 'What in the world is the matter?' I didn't know whether I had shot Mell or whether I had shot her. I didn't know which way to turn, and I heard a shuffling back in there, and I didn't even know what was in the gun, and I says, 'Well, Mell will be out,' and my mind says, 'Run on to the house,' and I says, 'I'll go and tell Wash about it,' and I starts up there and I says, 'I will go and tell Mr. Fletcher.' Mell came to the door and said something to me, and I got over. I looked back and seed Mell running, and says, 'What am I going to do?' I says, 'If them niggers overtakes me before I get to Mrs. Fletcher's, I will have something to break loose with.' I got to Mr. Fletcher's, and he says, 'West, what is the matter?' and I says, 'I killed Cherry over yonder.' Says he, 'Killed Cherry?' and I says, 'Yes, sir.' He says, 'Give me that gun,' and I handed him the gun, and I went to take the shell out. He says, 'Don't you take that shell out of that gun.' I taken it and throwed it down."

*Thomas H. Shanks,* for plaintiff in error.

*Clifford Walker, attorney-general, George C. Palmer, solicitor-general,* and *Mark Bolding,* contra.

BECK, J. (After stating the foregoing facts.)

1. In the motion for a new trial it is complained that at the conclusion of the defendant's statement the court refused to permit his counsel the privilege of calling his attention to a material omission from his statement, to wit: "I told Mr. Hargett that I killed Cherry; but I was so scared, as I thought the negroes were going to mob me, that I didn't know what I was doing or what I said." Counsel insisted that "it was discretionary with the court to permit defendant's counsel to call his attention to a material omission from his statement. The court refused to exercise this discretion, saying that the court had no discretion in the matter, that to do so would be reversible error, that the law was mandatory upon him, and that he (the court) had no such discretion." To this ruling the movant excepted. The court certified this ground of the motion with the following explanatory note: "The request of counsel for accused, stated in the 4th ground, was a whispered conversation with the court during the trial, not heard by State's counsel; and this is here stated on motion of latter." Under the circumstances this court will not reverse the judgment for the failure to permit counsel to make the suggestion in reference to the statement of the accused, as requested. True, it was in the discretion of the court, had a request or a motion been duly made, to permit the counsel to make a suggestion to the defendant in reference to his statement, so as to call his attention to any material omission therefrom. But, in order to invoke a ruling from the court, counsel should have made a request or motion in open court and in the hearing of the State's counsel, so that the latter might have opposed the motion had he desired to do so, or have consented to the request if he thought that was proper. But a request made of a court in a whispered conversation, though the judge was at that time on the bench, can not be treated as a motion made in open court; and the reply that the court may have made to a request made in such whispered conversation can not be made the subject of exception in a motion for a new trial. The precise question which we have before us, that is, whether or not this court will pass upon exceptions taken to a statement on an-

nouncement made by a judge in a private conversation, denying a request urged in such conversation, has already been passed upon by this court. In the case of *Grant* v. *State*, 97 *Ga.* 789 (25 S. E. 399), it was said: "1. Where, on a criminal trial, the accused introduced no evidence, and thus obtained the right to open and conclude the argument, and one of two counsel representing him thereupon addressed the jury, consuming less time than that allowed by the rules of court, and the solicitor-general, without having previously given notice of any such intention, then announced that there would be no argument for the State, it was the duty of the counsel for the accused, if they desired that one of them should continue to address the jury for the remainder of the time allowed for argument under the rules, to make in open court a motion or request to this effect to the presiding judge and obtain from him a ruling or decision thereon. 2. Where this was not done, but the counsel for the accused who had not addressed the jury merely stated to the judge in private conversation that he desired to argue the case, and wished the court to understand that he insisted upon so doing as a legal right of the accused, nothing stated by the judge in that private conversation is proper subject-matter for review by this court." But if we could treat the refusal of the judge to exercise the discretion which the law confers upon him in the matter of allowing a suggestion to be made or a question to be propounded to the defendant, calling attention to an omission from his statement, as a ruling made in open court, and should hold that he erred in refusing to exercise the discretion, or in holding that he had no discretion upon the subject, we would not, under the circumstances, grant a new trial in this case; for we do not see how it could be possible, in view of the evidence, for the additional statement sought by counsel for the accused to have changed the result. The defendant said enough in his statement, as it was actually made, to indicate, if the jury believed him, that he anticipated danger from a mob, and to show the state of his mind; for he declared that he said (as if speaking to himself), "If them niggers overtakes me before I get to Mrs. Fletcher's, I will have something to break loose with." And if counsel had called the attention of the accused to the omission from the statement, as he contends he should have been permitted to do, the accused would merely have added that when he had the

conversation with Mr. Hargett he was so badly frightened he did not know what he was doing or saying.

2.   In the absence of a request to charge on the subject of confessions and admissions, failure of the court to instruct the jury on those subjects is not ground for the grant of a new trial.

3.   The verdict is authorized by the evidence; and the judge of the court below having refused a new trial, his discretion will not be interfered with here.

*Judgment affirmed.   All the Justices concur.*

LUMPKIN and ATKINSON, JJ., concurring specially.   Under the facts of this case, the manner of the making of the suggestion to the court, and what transpired, we concur in the ruling that no cause for a new trial is shown.   While applications for rulings pending a trial should be so made as to afford the adverse party or counsel an opportunity to be heard, and the judge should require them to be so made, yet if he should not do so, and, understanding that a ruling is invoked, should make one which is erroneous and injurious to the party whose counsel invokes it, we are not prepared to state that such a ruling is equivalent to no ruling, and that it will furnish no ground for exception.