## SLIGH *v.* THE STATE.

94

No. 7776.   July 21, 1930.   Rehearing denied September 17, 1930.

*Daugherty & Daugherty, Lewis A. Mills, F. A. Knowles,* and *Philip Newbern,* for plaintiff in error.

*George M. Napier, attorney-general, R. S. Foy, solicitor-general, T. R. Gress, assistant attorney-general, Rogers & Rogers, Warren Mixon,* and *McDonald & McDonald,* contra.

HINES, J. (After stating the foregoing facts.)

In the first special ground of the motion for new trial, the defendant alleges that the jurors trying his case and during its progress, read and discussed newspaper accounts of the trial published in the Atlanta Journal and the Macon Telegraph. This ground is supported by the affidavit of Harper, the bailiff who had charge of the jury during the progress of the trial. In his affidavit Harper deposes that the jurors read and discussed among themselves the account of the trial published in the Atlanta Journal of November 20, 1929, and that one of the jurors after reading said account remarked to the others "This is the way we should look at this case." In the counter-showing made by the State the jurors made a joint affidavit in which they deposed that they had no knowledge of the account of the trial which appeared in the Atlanta Journal of the above date, and that it had not been read by any member of the jury while they had this case under consideration. "The affidavits of jurors may be taken to sustain but not to impeach their verdict." Civil Code (1910), § 5933. The bailiff in charge of the jury having deposed in his affidavit that the jurors read said account in the Atlanta Journal, and all of the jurors having deposed that they had no knowledge of the account of the trial which appeared in the Atlanta Journal of the above date, and that it had not been read by any member of the jury while they had said case under consideration, the trial judge, in these circumstances, became trior of the fact, and he was fully authorized to find the issue against the defendant. *Glover* v. *State,* 129 *Ga.* 717 (59 S. E. 816).

In his affidavit this bailiff further deposed that R. L. Barfield, one of the jurors trying said case, procured a copy of the Macon Telegraph of November 21, 1929, which contained an account of the trial of the case up to and including the previous day; and that when the jury arrived at the court-house and went into their room, certain members of the jury read this account of the trial. From the rebutting affidavits of eleven of the jurors introduced by the State it appears that the copy of the Macon Telegraph, embracing an account of the trial as above, was purchased by said R. L. Barfield, but that this account was not read by all the jurors. It is a clear inference from the affidavits of these jurors, introduced by the State in rebuttal of the affidavit of the bailiff, that some of the

jurors read the account of the trial appearing in the Macon Telegraph. So we must treat as true that some of the jurors read this account. It is insisted by counsel for the State, that, notwithstanding this fact, all the jurors made a joint affidavit in which every member of the jury deposed that he was not influenced in arriving at the verdict rendered in this case by reason of having read anything in any newspaper, or from the fact that any other person had read anything in any newspaper, or because of any information received concerning said case other than that received in open court in the trial of said case; and the State contends that any presumption of harm to the defendant arising from the reading by the jurors of the account in the Macon Telegraph had thus been rebutted. Is it competent for jurors to depose, after having read a newspaper account of the trial, which was calculated to prejudice the defendant, that they were not influenced by the reading of such account, and in this way rebut the presumption of injury arising from the reading of a newspaper article? We have seen that affidavits of jurors can be taken to sustain their verdicts.

In *Killen* v. *Sistrunk*, 7 *Ga.* 283, this court held that where a paper, which was capable of influencing the jury on the side of the prevailing party, went to the jury by accident, and was read by them, the verdict would be set aside, although the jury may think that they were not influenced by such paper. The reason given for this ruling was that it was impossible for the jury to say what effect it may have had on their minds in reaching a verdict. The Court of Appeals applied this principle in a criminal case. *Waters* v. *State,* 25 *Ga. App.* 577. (103 S. E. 835). There are outside cases, in which it is held that where the act of misconduct is admitted, it can not be shown by the jurors that the defendant suffered no prejudice by reason thereof. 16 C. J. 1240 (§ 2753) (2), notes 21, 22; State *v.* Lentz, 45 Minn. 177 (47 N. W. 720); Aldrich *v.* Wetmore, 52 Minn. 164, 172 (53 N. W. 1072); State *v.* Lilja, 155 Minn. 251 (193 N. W. 178); 27 R. C. L. 899. Some of these decisions hold that under such circumstances the presumption of prejudice is conclusive. Under these rulings it would seem that the State did not make a good counter-showing by affidavits of jurors in which they deposed that although they read this newspaper account they were not influenced thereby in reaching the verdict they returned; but on this subject we make no ruling in

this case, for the reason that it can be decided without so doing. Undoubtedly it was improper for the jury to read this newspaper account. In *Styles* v. *State,* 129 *Ga.* 425 (59 S. E. 249, 12 Ann. Cas. 176), a new trial was granted where the jury read copies of a newspaper containing an editorial which was calculated to mislead the jurors and to prejudice them against the defendant. In that case it was very properly held that "It is improper for jurors charged with the trial of a murder case to read from a newspaper editorials which directly or indirectly tend to influence their minds and to destroy their perfect freedom from bias or prejudice, either for or against the accused." But new trials will not be granted in all cases where jurors have read a newspaper account of the trial during its progress. This depends very much upon the character of the newspaper article read by members of the jury. Counsel for the defendant urge that this account contained three statements which were prejudicial to the defendant. One of these statements is this: "The State called for the death penalty for 'a crime which followed a trail three years old, and involved transactions from Maine to Florida, and from California to Georgia.'" It is insisted by counsel for the defendant that the reporter in this statement denominated the charge against the defendant as a "crime," and that this amounted to an assertion on the part of the reporter that the defendant was guilty, and was calculated to have and did have a very harmful effect on the minds of the jurors, although they made an affidavit to the contrary. From a perusal of this account it plainly appears that this was a statement made by the solicitor-general in his speech to the jury, and was not a statement originating with the reporter. This statement was made in open court to the jury; and we do not see how the report of this statement of the solicitor-general, which appeared in this newspaper account, can be construed as a statement of the reporter that the accused was guilty. There was no contention that it was an incorrect statement of the position taken by the State. The jurors already knew about all that had occurred during the progress of the case, and the statements made by the solicitor-general during its progress, and it could do no harm for them to read what they already knew. People *v.* Fernandez, 3 Cal. App. 689 (86 Pac. 899). The defendant had taken no exception to the remarks of this officer, and we do not see that he had any valid ground to object thereto.

Another statement in this account, to which counsel for the defendant takes exception, is that the solicitor-general spoke at length on the dovetailing of the facts in the conversation between Dawson and the defendant in 1925 with the facts and circumstances appearing on the trial of this case. The defendant complains that the reading of this statement in this account was in effect allowing the reporter to testify or say to the jury that the story of Dawson dovetailed with the facts and circumstances in evidence in the case, and amounted in effect to telling the jury what Dawson had testified to as occurring between him and the defendant in 1925. A perusal of this account shows that the reporter was not telling the jury what the witness Dawson had testified to, but was reporting the argument of the solicitor-general to the jury, in which he asserted that the story of this witness dovetailed in with the facts and circumstances in evidence in the case. It was simply a narrative of a portion of the argument of the solicitor-general. The third statement in this account, to which defendant excepts, is this: "As the judge was making his charge the atmosphere of 'the court-room tightened. Sligh, until then in apparently absolute composure, became obviously nervous, and his hands trembled as he fingered a cigarette." Movant insists that from reading this statement the jurors would most probably have inferred that the defendant's consciousness of guilt made him nervous and made his hands tremble as he fingered his cigarette. There is no contention that this statement of the reporter was incorrect. We do not think that the deduction drawn from this statement is well taken. We do not think that intelligent jurors would infer from the nervousness of the defendant during the charge of the judge to the jury, and from the trembling of his hands as he fingered a cigarette, that these conditions were due to consciousness of guilt on his part. While we are of the opinion that it was improper for members of the jury to read this account in the Macon Telegraph, we do not think that this impropriety on the part of some of the jurors requires the grant of a new trial on account of the above statements contained therein. From a perusal of this account we find that the other statements contained therein correctly gave the facts occuring upon the trial of the case.

Besides, the judge instructed the jury that it was their duty to take the testimony of witnesses who were sworn, who went upon

the witness-stand and testified in the case, and the documentary evidence which was submitted and which would go out with them to the jury room, and that they were to consider this testimony and documentary evidence, and from a consideration thereof they were to arrive at the true facts of this case, as they believed them to be. A new trial will not be granted in all cases where jurors read during the progress of trials newspaper accounts thereof. This court has dealt with this question in only a few cases. In *Hunter* v. *State*, 43 *Ga.* 483, the newspaper contained an article which referred to the case by name as an important one, and severely criticised counsel for the accused because of certain language employed by him in his argument for a change of venue. The newspaper was read by the jurors in the presence of the court and counsel for the accused, who, although seeing the jurors reading the paper, made no objection until after the verdict. This court held that the reading of a newspaper in open court, the fact being known to counsel of the accused, and the same not being excepted to by him then and there, would not constitute a ground of error sufficient to set aside the verdict. In *Flanegan* v. *State*, 64 *Ga.* 52, the bailiff in charge of the jury procured newspapers for one of the jurors trying the case. It did not appear that there was any statement in the newspaper which had reference to the case on trial. This court held that the procuring by the bailiff for the juror of newspapers and the reading thereof by the juror would not necessitate a new trial, it not appearing that any harm was done to the defendant. In *Fogarty* v. *State*, 80 *Ga.* 450 (5 S. E. 782), it was held that the fact that two of the jurors read copies of a newspaper after they had been empaneled, which contained nothing about the case except that it was on trial, was not a good ground for a new trial. As stated above, this court in *Styles* v. *State*, supra, properly held that it is improper for jurors charged with the trial of a murder case to read from a newspaper editorials which directly or indirectly tend to influence their minds and to destroy their freedom from bias or prejudice either for or against the accused. In that case the editorial which the jury read contained the opinion of the solicitor-general upon the outcome of another murder trial, in which the solicitor-general stated that he had come to the conclusion that human life was too cheap in this country, due to the fact that juries are too lax in enforcing the law, and that there

were entirely too many homicides in the county where the case commented upon was tried, that there were nearly one hundred homicides in the United State to one in Canada, and that there was but one explanation of this fact, and that was that in Canada the law was enforced and that in the United States it was not.

A new trial, however, will not be granted in all cases, where such impropriety or irregularity exists. It does not necessarily follow that a new trial will always be granted in all cases of such irregularity. Where a jury could not honestly or intelligently return any other verdict than the one rendered, a new trial will not be granted on account of the impropriety with which we are dealing. In many criminal cases, including cases of murder, this court has held that it would not grant new trials on account of errors in admitting or rejecting evidence, in instructions to the jury, or an account of other irregularities in the trial of a case, if this court was fully satisfied that justice had been done and that under the evidence no other verdict could properly have been found. *Bird* v. *State,* 14 *Ga.* 43; *Johnson* v. *State,* 14 *Ga.* 55, 65; *Parker* v. *State,* 34 *Ga.* 262, 267; *Wise* v. *State,* 34 *Ga.* 348; *Braswell* v. *State,* 42 *Ga.* 609 (4); *Tucker* v. *State,* 57 *Ga.* 503; *Johnson* v. *State,* 59 *Ga.* 142; *Hussey* v. *State,* 69 *Ga.* 54, 59; *Hagar* v. *State,* 71 *Ga.* 164, 167; *Pascal* v. *State,* 77 *Ga.* 596 (3 S. E. 2); *Crawford* v. *State,* 92 *Ga.* 481 (17 S. E. 906); *Lanier* v. *State,* 106 *Ga.* 368, 371 (32 S. E. 335); *Haupt* v. *State,* 108 *Ga.* 60, 64 (33 S. E. 829). Those decisions did not deal with the impropriety of jurors in reading newspaper accounts of the proceedings in cases on trial; but the principle announced in them is applicable where the impropriety consists in the reading by jurors of newspaper articles giving accounts of trials in progress. A new trial will not be granted on this account if a manifestly just verdict has been rendered. *Fogarty* v. *State,* supra; 16 C. J. 1164 (§ 2672), (b). After a careful study of the evidence in this case, we have reached the conclusion that no verdict other than that for murder, unless it were one imposing the extreme penalty of the law, could have been returned by the jury. The defendant introduced no evidence. He made a statement in which he only denied the truth of the testimony of Dawson and his own guilt. He made no denial or explanation of the various facts and circumstances which appeared from the evidence introduced by the State, and which pointed

clearly and satisfactorily to his guilt. In these circumstances we can not hold that the trial judge, who is vested with a large discretion in granting or denying a new trial upon the ground that the jurors read this newspaper article, abused his discretion.

■ In the second special ground of the motion the defendant complains that a new trial should have been granted him for the reason that after all the evidence had been submitted and the charge of the court to the jury had been delivered, and while the jury had his case under consideration, and as they were being returned to the court-room from lunch, W. C. Coker communicated with B. F. Tanner, a member of the jury trying the case, by telling said juror that the residence of a son-in-law of the juror had just been destroyed by fire, and that he had practically lost everything he had. This communication from Coker to the juror was made shortly before the jury returned their verdict of guilty. We do not think that this communication was sufficient to require the grant of a new trial. It did not in any way tend to injure or prejudice the defendant. Besides, it does not appear that this communication was had without leave of the court.

■ In the third ground the defendant complains that the verdict was without sufficient evidence to support it, that the evidence did not establish the corpus delicti, that the verdict was contrary to the clear and able charge of the trial judge, and that it was incumbent upon the State to prove the corpus delicti to a moral and reasonable certainty and beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis. A thorough and careful reading of the evidence in this case shows that the corpus delicti was proved. The evidence in substance is set out in the statement of facts preceding this opinion. It is sufficient to clearly satisfy any reasonable inquirer after the truth that a murder was committed, that the victim was the person alleged in the indictment to have been killed, and that the defendant was the perpetrator of the crime. Where a dead body, partially destroyed by fire, was found in the debris of the burned residence of the defendant, with head, arms and legs truncated, no remains of the head, arms, and legs being found, but the remainder of the charred body was taken out, this was sufficient evidence to prove the corpus delicti. *Thomas* v. *State,* 67 *Ga.* 460 (6). So we are of opinion that this ground is without merit. In *Langston* v. *State,* 151 *Ga.*

388 (106 S. E. 903), this court was dealing with the sufficiency of the evidence to corroborate a confession where there was no evidence to show that death was caused by any criminal agency.

■ The defendant requested the court to charge the jury as follows: "I charge you that if you find from the evidence in this case that the State has proved for your consideration any statements or admissions alleged to have been made by the defendant, as a necessary part of its chain of evidence against this defendant, it is your duty to consider such statements or admissions in their entirety, or as a whole, for the purpose of determining what the truth of such statements or admissions is, and you can not reject and disbelieve the remaining portion of the same." The court was requested to instruct the jury in effect that it was their duty to consider statements or admissions made by the defendant in their entirety and as a whole, and that they could not accept and believe a portion thereof, and reject and disbelieve the remaining portions of the same. This request did not embody a correct principle of law. The jury was not required to accept and believe statements or admissions made by a defendant in their entirety. They could, if they saw proper, accept a part thereof as true and reject a part thereof as false. *Morrow* v. *State,* 168 *Ga.* 575 (4) (148 S. E. 500).

■ The court charged the jury as follows: "If you find from the evidence in this case that the State has proved for your consideration any statements or admissions alleged to have been made by the defendant, as a necessary part of its chain of evidence against this defendant, it is your duty to consider such statements or incriminatory admissions, if proved, in their entirety, or as a whole, for the purpose of determining what the truth of such statements or admissions is; you are authorized to accept and believe a portion of such statements or admissions, and reject and disbelieve the remaining portion of the same if you do not believe it to be true." Defendant excepts to this charge on the ground that the corpus delicti was not sufficiently established, leaving out the extrajudicial statements alleged to have been made by the defendant; that as the State was forced to prove these statements in order to establish the corpus delicti, the State vouched for their truth as a whole; and that for this reason this charge was error. The exception to this charge is not well taken. When the State

introduces inculpatory statements or admissions made by one charged with crime, it does not vouch for the truth of all portions of such statements or admissions as a whole. A confession or inculpatory statement may be partially or wholly rejected by the jury, if the whole or a part is not believed by them. *Morrow* v. *State,* supra.

■ The court charged the jury as follows: "In compliance with your request for instructions in regard to the question of venue, I will state that I do not now recall that I gave you any special instructions as to the question of venue, or the place of the crime. I did instruct you, however, that the burden was upon the State to prove to your satisfaction, beyond a reasonable doubt, all of the material allegations or charges in the indictment, and one of these material allegations or charges is that the offense was committed in Irwin County. In determining whether or not the offense was committed in Irwin County, you are authorized to consider all of the facts and circumstances in evidence before you, and you will determine that just as you would determine any other fact or circumstance in evidence in this case." Defendant excepts to this charge on the grounds that the burden was on the State to prove the venue beyond a reasonable doubt, and that the jury were not authorized "to determine that just as they would determine any other fact or circumstance in this case;" and that the charge was misleading and confusing, for the reason that it applied the wrong measure to the proof required to establish venue. The first exception is without merit. The court instructed the jury that the burden was upon the State to prove to the jury to their satisfaction beyond a reasonable doubt all the material allegations in the indictment, and that one of these material allegations was that the offense was committed in Irwin County. Thus the court instructed the jury that the venue must be proved beyond a reasonable doubt. The other exception is equally without merit.

■ In the seventh ground the defendant contends that there was no sufficient proof of the venue. The distinct proof is that this homicide, if committed, occurred at the residence of the defendant, which the testimony shows was in the County of Irwin. There is nothing in the record to contradict this proof offered by the State; and this ground is not well taken.

■ In the eighth ground the defendant asserts that the court

illegally admitted the evidence of J. J. Dawson, a witness for the State. This evidence is set out in the statement of facts preceding this opinion. This witness testified that in 1925 the defendant disclosed to him a scheme by which he was to get in his house a negro whom he would chloroform, put handcuffs upon him, fix the negro's teeth so that his dentist could identify them as his own teeth, and burn this negro up, to get some insurance on his life. The defendant in this statement said that he would claim that he got into a scuffle with a man trying to rob him in the house, and that after that he lost his memory. He stated to this witness that this would be his explanation as to why he did not remember anything. The defendant objected to the admission of this evidence, upon the grounds (a) that it put the defendant upon trial for a crime for which he was not charged and which he had not committed; (b) that it put his character in evidence on direct examination, before any evidence had been offered by him; (c) that the conversation referred to by the witness was too far removed in time from the case under investigation to have any probative value, and was therefore irrelevant and immaterial; and (e) that the defendant told this witness that he had changed his mind with reference to what he intended to do, and that the presumption is that his mind stayed changed right on. This evidence was properly admitted. It is now well settled in this State that evidence tending to show the commission of a crime other than that for which the accused is on trial is admissible for the purpose of showing motive, plan, or scheme. *Frank* v. *State,* 141 *Ga.* 243 (80 S. E. 1016); *Hill* v. *State,* 148 *Ga.* 521 (97 S. E. 442); *Williams* v. *State,* 152 *Ga.* 498, 521 (110 S. E. 286); *Merritt* v. *State,* 168 *Ga.* 753 (149 S. E. 46). If this be so, then clearly evidence tending to show that the defendant had previously concocted a scheme similar to the one which he was charged in the present case with having planned and executed was admissible for the purpose of showing motive and plan.

In the ninth ground the defendant urges that the court.erred, over his objection that it was hearsay, in permitting W. E. Tyler, a witness for the State, to testify that he saw a pair of handcuffs which Dawson said were found in the ashes where the residence of the defendant was burned. This ground does not contain all that the witness testified to upon this subject. This witness testified

that he did not find any handcuffs, but saw a pair that had been in the fire, and that Dawson said they were found there in the ashes. The circumstances under which this statement of Dawson was made are not set out in the motion. This evidence could have been admissible to identify the handcuffs about which this witness was testifying. Besides, the admission of it, even if it were hearsay and under no circumstances admissible, was not sufficient, under the facts of this case, to require the grant of a new trial.

The verdict is amply supported by the evidence, and has been approved by the trial judge; and we see no reason for setting it aside upon the ground that it is not supported by the evidence.

*Judgment affirmed. All the Justices concur, except Russell, C. J., and Atkinson, J., who dissent.*