## 48626. SCUDIERE v. THE STATE.

HALL, Presiding Judge. Richard Scudiere, Jr., appellant here, sold

marijuana and LSD to undercover agent H. V. Kronise, a police officer with the Augusta police department. Another undercover agent accompanied Kronise, and one Wallace Moore was with Scudiere at the apartment where the sales were made. Scudiere and Moore were jointly indicted and tried on two counts, one for the sale of marijuana and one for the sale of LSD. Kronise testified at the trial concerning the circumstances of his purchase from Scudiere, whom he identified as the seller. The state also presented the testimony of Steven Carothers, an acquaintance of Scudiere and his cellmate following his arrest on these charges, that in an in-jail conversation with Carothers "He [Scudiere] had said he had sold to a narcotics agent and that he was selling dope." . . . "that he was selling drugs and that he gave Wallace Moore a dollar for gas of the marked money." The jury acquitted Moore and convicted Scudiere on both counts, from which he brings this appeal.

1. Enumeration 1, concerning the overruling of the new trial motion, raises only points enumerated as error individually and disposed of by this opinion.

2. Enumeration 2 claims error in the trial court's failure without a request to charge the jury on the weight and credit to be given the testimony of expert witnesses. In the absence of a request, the failure of the court to charge on the subject of expert testimony is not ground for a new trial. *Cameron v. State,* 111 Ga. App. 691, 692 (143 SE2d 189); *Godwin v. Atlantic Coast Line R. Co.,* 120 Ga. 747 (6) (48 SE 139).

3. As his third claimed error, Scudiere enumerates the trial court's failure without a request to charge on the subject of admissions and confessions with respect to his remarks to his cellmate Carothers. In the absence of a request to charge no error occurred, whether these remarks be considered a mere admission (*Norrell v. State,* 116 Ga. App. 479 (2) (157 SE2d 784)), or as a confession (*Story v. State,* 145 Ga. 43 (2) (88 SE 548); *Staggers v. State,* 101 Ga. App. 463, 464, 465 (114 SE2d 142); *Keen v. State,* 43 Ga. App. 331 (3) (158 SE 611); *Chapman v. State,* 28 Ga. App. 107 (2) (110 SE 332); *Washington v. State,* 24 Ga. App. 65 (3 a) (100 SE 31)).

4. Fourth, Scudiere enumerates error in the trial court's allowing Carother's testimony of his "confession" to be presented to the jury without a voluntariness hearing claimed to be required by Jackson v. Denno, 378 U. S. 368 (84 SC 1774, 12 LE2d 908); Sims v. Georgia, 389 U. S. 404 (88 SC 523, 19 LE2d 634); and Sims v.

Georgia, 385 U. S. 538 (87 SC 639, 17 LE2d 593). This contention cannot succeed because not only is there no claim by Scudiere that his statements to Carothers were in any way involuntary, but on this record no colorable claim of involuntariness seems feasible. In Procunier v. Atchley, 400 U. S. 446 (91 SC 485, 27 LE2d 524), the Supreme Court held that accused's statements concerning the killing, made to an insurance agent visiting him in the jail, who in collaboration with officials tape recorded the conversation, were as a matter of law not involuntary. No hearing on voluntariness is required until some claim of involuntariness is made (Procunier v. Atchley, 400 U. S. p. 451); see Sims v. Georgia, 389 U. S. 404, supra. No such claim is made here, and the only objection to this testimony at the time it was given was that it put Scudiere's character in issue. "Absent a proper objection and any evidence that the defendant's in-custody statement was involuntary, the admission of such statement in evidence without a hearing as to its voluntariness was not error." *Watson v. State,* 227 Ga. 698 (1) (182 SE2d 446); accord, *Fountain v. State,* 228 Ga. 306, 309 (185 SE2d 62).

5. Fifth, Scudiere enumerates the admission of the testimony complained of in paragraph four above on the additional ground that over his objection it injected his character in evidence. This testimony was admissible for the reasons stated above, and this fifth enumeration is without merit.

6. The sixth enumeration claims error in the trial court's failure to charge the jury that they must make an independent determination of the voluntariness of the confession under Jackson v. Denno, supra. Such an instruction is unnecessary where, as discussed above, no evidence of nor claim of involuntariness appears. Jackson v. Denno, on which Scudiere founds his position, does *not* allow the jury independently to pass on voluntariness, as was pointed out by Mr. Justice Black in his dissenting opinion in Sigler v. Parker, 396 U. S. 482, 484 (90 SC 667, 24 LE2d 672). Nor does Georgia law independent of Jackson v. Denno and its progeny require the jury to pass on voluntariness where there is no claim of involuntariness. See 7 Encyclopedia of Georgia Law, Criminal Law § 523 (1963).

7. The seventh enumeration concerns the court's failure to grant the mistrial motion when Carothers testified that Scudiere told him "that he had sold drugs" *prior* to the offense in question. The objection was made that this injected Scudiere's character in evidence. The State urges that this testimony is admissible to

show state of mind, course of dealing, or scheme of the accused. Though the point is perhaps not entirely free from doubt, we hold that no error occurred, on the authority of *Terry v. State,* 36 Ga. App. 305 (136 SE 476), a case involving the scienter with which transactions in contraband were performed, as well as *Ledford v. State,* 215 Ga. 799, 804 (113 SE2d 628), holding that no error occurred in refusing a mistrial motion where the statement of other crimes was a part of the accused's confession to the crime charged. See *Moore v. State,* 221 Ga. 636 (1) (146 SE2d 895); *Sligh v. State,* 171 Ga. 92, 110 (154 SE 799); *Diggs v. State,* 90 Ga. App. 853, 858 (84 SE2d 611); *Goldberg v. State,* 20 Ga. App. 162, 163 (92 SE 957). In any event, here the trial court explicitly instructed the jury to disregard the testimony entirely, cf. *Ledford v. State,* supra, p. 800. Moreover, Carothers testified to Scudiere's admission of guilt *of the crime charged,* and the undercover agent testified to making the purchase from Scudiere. On this record, had error occurred with reference to testimony of earlier drug sales, the same would be harmless.

8. Scudiere enumerates as his eighth error the court's refusal to grant his mistrial motion subsequent to agent Kronise's testimony on cross examination that "I did not induce him to commit any crime that he wouldn't have committed before I came there." The objection was that this put defendant's character in issue. The trial judge has large discretion in matters of this type, see *Bowen v. State,* 123 Ga. App. 670 (182 SE2d 134), and here elected to deny the motion based upon the fact that Scudiere's attorney had elicited such an answer by the formulation of his question to the agent which was "You went there to try to make somebody commit a crime, didn't you?" We hold the answer responsive to the question and find no merit in this enumeration.

9. Enumeration nine urges that the record shows entrapment. On the contrary, the record is devoid of evidence of entrapment. Agent Kronise testified that he went to the place in question with police money with which to make drug purchases. However, he did not himself even ask to buy drugs; he waited until Scudiere asked if he would like to buy, and he said "Yes." No entrapment exists where the officer merely furnishes an opportunity to a person who is ready to commit the offense. *Sutton v. State,* 59 Ga. App. 198 (2) (200 SE 225).

10. Enumeration ten complains of the admission of state's exhibit one which was a paper sack containing the drugs sold to the

agent, on the double ground that the chain of custody was not adequately proved and that the writing on the bag, "Victim: Richard Scudiere and Wallace Moore" appeared to connect the two defendants to the crime. Concerning the chain of custody, Scudiere complains in essence that there were two occasions when the chain was broken: when officer Joyner held them in a locked box in the locked trunk of his car while he ate supper at home before delivering them to the locker at the jail; and when witness Price from the crime lab kept the drugs in his bedroom closet one evening before bringing them to the trial. In the absence of any evidence to refute the testimony of the unbroken chain of custody, there was no error in admitting the exhibit. *White v. State,* 230 Ga. 327, 334 (196 SE2d 849). It is not necessary that the state show the drugs to have been personally guarded each minute.

Regarding the writing on the bag, the enumeration is without merit: such writing showed only identification of the source of the contents and was in effect part of the chain of custody. The two defendants were connected to the crime charged through eyewitness testimony and not through this bag.

11. The eleventh enumeration, alleging as error the trial court's allowing the witness Price, a chemist from the Department of Public Safety Crime Laboratory to testify over Scudiere's objection that he presented no certificate to prove that he was a licensed and authentic agent, is without merit. Scudiere concedes on appeal that no statute requires this, and no other authority for his position is set forth. We decline to create through judicial legislation the rule he urges.

12. The twelfth enumeration complains of sex and race discrimination in the selection of the panel of 48 persons from whom Scudiere's jury was chosen. To pass over the issue presented by Scudiere's claim that this challenge was made in writing and that the clerk of court lost it, and the state's denial in response that it was ever served with such a challenge, we consider Scudiere's evidence on the merits. He showed only a census report indicating that some 162,000 people were in the county, of whom some 48,000 were black. No evidence was presented on the number of women. He visually observed and stated to the court that of the 48 persons on the venire he saw only four blacks and three women. That concluded his evidence of discrimination. He relies on Alexander v. Louisiana, 405 U. S.

625 (92 SC 1221, 31 LE2d 536) but that case does not support him. In Alexander, the petitioner showed the entire process of selection of jurors, with a diminishing percentage of Negroes at each step, combined with a racial designation on the papers identifying each prospective juror, and a total record on which the court could not say that the commissioners *had not* discriminated. The court was careful not to base its decision on mere percentages in ruling that discrimination was adequately proved: "This Court has never announced mathematical standards for the demonstration of 'systematic' exclusion of blacks but has, rather, emphasized that a factual inquiry is necessary in each case that takes into account all possible explanatory factors. The progressive decimation of potential Negro grand jurors is indeed striking here, but we do not rest our conclusion that petitioner has demonstrated a prima facie case of invidious racial discrimination on statistical improbability alone, for the selection procedures themselves were not racially neutral." 405 U. S. p. 630.

Purposeful discrimination is not shown by evidence that a single panel (of 16 persons) from whom 12 are chosen for the jury contained a disproportionately small percentage of women or blacks compared to the population at large. Adkins v. Texas, 325 U. S. 398 (65 SC 1276, 89 LE 1692). Scudiere's evidence is exactly the kind that was held in *White v. State,* 230 Ga. 327, 331-332 (196 SE2d 849) to be inadequate to show de facto discrimination. Compare Labat v. Bennett, 365 F2d 698 (5th Cir.) cert. den. 386 U. S. 991 (prima facie case made out by showing abnormally low percentage of blacks for up to four years prior to trial.) No prima facie case of discrimination was shown.

13. As his thirteenth enumeration Scudiere complains that he received no formal arraignment after his written demand for the same on January 31, 1973. The record, however, shows that on February 15, 1973 he waived formal notice of arraignment and stood mute, whereupon a not guilty plea was entered for him. There was no error in this procedure. *Hardwick v. State,* 231 Ga. 181 (200 SE2d 728). Contrary to Scudiere's contention that he is entitled to be arraigned in the presence of the jury, the jury cannot be impaneled and sworn until after arraignment. Id.

14. Finally, error is enumerated in the trial court's failure to grant a new trial on the general grounds that there was no proof the sale occurred in Richmond County or that Scudiere sold LSD to the agent. These assertions are entirely frivolous. One agent

placed the sale at the apartment, and another agent placed the apartment in the county. Agent Kronise testified he was shown two LSD tablets *by Scudiere,* "And I purchased these two for $2.50 apiece." The agent also testified that Scudiere told him the service was transferring him "up north." Later, on cross examination Scudiere's attorney asked Kronise "You say that this man you talked to *that you claim you bought this stuff from* said he was in the Service and was being transferred to Alaska?" The answer was "He said he was going to be." Scudiere was amply identified as the seller of the LSD.

The fourteen enumerations of error all being without merit, the judgment is affirmed.

*Judgment affirmed. Clark, J., concurs. Evans, J., concurs specially.*

ARGUED OCTOBER 3, 1973 — DECIDED DECEMBER 4, 1973 — REHEARING DENIED DECEMBER 18, 1973 — ■■■■■■■■

*Guy B. Scott, Jr.,* for appellant.

*Richard E. Allen, District Attorney,* for appellee.

EVANS, Judge, concurring specially. I concur in the judgment affirming the trial court, but not in all that is set forth in the majority opinion.

Specifically, as to enumeration of error number 7, if this were a close case, I would feel that the error there complained of warrants a reversal and the grant of a new trial.

H. V. Kronise, Jr., a captain in the Augusta Police Department, was sworn as a witness by state's counsel, and on cross examination the following question and answer appear in the record: "Q. You went there to try to make somebody commit a crime, didn't you?" "A. No, sir. I did not give him — I did not induce him to commit any crime that he wouldn't have committed before I came there." Defendant's counsel objected because the answer attempted to inject defendant's character into evidence, and moved for a mistrial, which motion was overruled.

The majority opinion holds the answer to be responsive, with which holding I am in violent disagreement. It appears to have been a calculated and deliberate effort by the police captain to prejudice the rights of defendant, by testifying in a general and unsubstantiated fashion that defendant *would have* committed any crime that the policeman sought to induce him to commit, even if the inducement were absent. It was anything but responsive to the question. The policeman was not asked what crimes defendant *would have* committed absent the police captain's inducement,

and yet that is what he answered. He did not answer the question that was propounded, to wit: "You went there to try to make somebody commit a crime, didn't you?" The police captain had to realize *that his own conduct* was under investigation at this point, *and not the conduct of the defendant.* And yet witness switched his answer and responded to something that was not asked; and sought to smear the defendant by saying that defendant *would have* committed any such crime with or without inducement. The policeman thus sought to divert attention from his own conduct — which was the proper subject of investigation under cross examination — and changed the subject and talked of another matter, to wit, the defendant's conduct. In my opinion, this was prejudicial conduct by the witness, deliberately committed, and the learned trial judge should have rebuked the witness in stern fashion. I repeat, that if this were a close case (but it is not close) I would vote to reverse and grant a new trial.