## A04A0025. RICHARDSON v. THE STATE.
### (595 SE2d 678)

RUFFIN, Presiding Judge.

A jury found Che Joseph Richardson guilty of armed robbery. The trial court denied his motion for new trial, in which he claimed, among other things, ineffective assistance of counsel. Richardson appeals, challenging the sufficiency of the evidence. He also argues that the trial court committed a charging error and improperly failed to hold a *Jackson-Denno*[1] hearing. Finally, he asserts that trial counsel's ineffectiveness demands reversal. For reasons that follow, we affirm.

1. When reviewing the sufficiency of the evidence, we construe the evidence in the light most favorable to the verdict.[2] "We do not weigh the evidence or decide the witnesses' credibility, but only determine if the evidence is sufficient to sustain the conviction[ ]."[3]

Viewed in this manner, the evidence shows that in September

---

[14] *McPetrie v. State*, 263 Ga. App. 85, 90 (6) (587 SE2d 233) (2003); *Taylor v. State*, 195 Ga. App. 314, 316 (4) (393 SE2d 690) (1990).
[1] See *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).
[2] See *Thomas v. State*, 249 Ga. App. 556 (1) (548 SE2d 71) (2001).
[3] Id.

2000, Jordan Harbin began working as a delivery man for One Way Pizza. On his first night on the job, he was dispatched to a residence to deliver pizza. He followed the directions given to him, but could not find the residence and prepared to return to the pizza shop. At that point, however, he heard someone yell and saw a person walk out in front of a house. Harbin got out of his car to deliver the pizza, which was in a delivery bag.

Harbin recognized the person in front of the house as Jason Houston, an individual with whom he had attended school. He approached Houston and stated the amount owed for the pizza. Another individual then walked up, told Harbin that he was being robbed, and held up a rifle. When this individual stepped into the light, Harbin recognized him as Richardson, who also had attended Harbin's former school. Harbin attempted to get away from the two men, but a third individual grabbed him from behind and began choking him.

Houston slapped the pizza from Harbin's hands, and Richardson told Houston to search Harbin's pockets. While Richardson held the rifle on Harbin, Houston took Harbin's money, as well as the pizza. Richardson, who appeared to be the "organizer" behind the robbery, asked Harbin whether he was "ready to die," touched the gun to his chest, and waved the gun in his face. The three assailants then ran in different directions.

Harbin reported the robbery to the police, described Houston and Richardson to the officers, and provided their names. Harbin also showed the police pictures of Houston and Richardson from his school yearbook. Harbin did not see the third individual who grabbed him from behind.

Early the next morning, the police located Richardson and Houston at the home of Richardson's parents. Officers searched the premises and found Harbin's pizza delivery bag outside the house, in a garbage can.

Richardson testified in his own behalf at trial. He admitted that he was present at the scene and saw Houston and several other individuals rob Harbin, but asserted that he did not take part in the crime. According to Richardson, one of these other individuals held the gun on Harbin. Houston also testified and corroborated Richardson's version of events.

Despite this testimony, the jury found Richardson guilty of armed robbery. On appeal, he argues that the evidence is insufficient to sustain the verdict. We disagree. Given Harbin's identification of Richardson, his testimony about Richardson's role in the robbery, and the discovery of the pizza delivery bag at the Richardson home,

the jury was authorized to find Richardson guilty beyond a reasonable doubt of the crime charged.[4]

2. Richardson also asserts that the trial court erred in failing to hold a *Jackson-Denno* hearing to determine the voluntariness of several statements to police. Again, we disagree.

During the State's case-in-chief, Investigator Joey Waters testified that, after police arrested Houston and Richardson, he tried to interview Houston, who refused to make a statement. Waters then "made contact" with Richardson. Waters testified that he advised Richardson of his *Miranda* rights, obtained a signed waiver of those rights, and spoke with Richardson, who stated "that he didn't know anything about the incident until the deputies came to his house." Immediately following this testimony, the trial court called the attorneys to the bench and indicated that, before the prosecutor could "go into any statements," Richardson had a right to a *Jackson-Denno* hearing outside the jury's presence. Richardson's counsel responded: "Yeah, let's go ahead and have one." The prosecutor then asserted that Waters was talking about Houston's statement, not Richardson's statement, and that Waters would not say anything else about it. The trial court instructed the prosecutor not to "go into any statements by [Richardson until] we have another hearing." The prosecutor responded, "[y]es, sir," and Richardson's counsel made no further comment.

The State also presented a rebuttal witness to challenge Richardson's assertion at trial that he did not know how to drive a car.[5] A sheriff's deputy who spoke with Richardson in February 2001 "[o]n an unrelated matter" testified that Richardson stated at that time that he knew how to drive. Richardson did not object to the admissibility of this testimony.

Richardson argues that the trial court erred in not conducting a *Jackson-Denno* hearing regarding these statements to police. "Where the voluntariness of a confession is questioned on the trial of a criminal case it is necessary . . . to have a separate [*Jackson-Denno*] hearing as to the voluntariness before it is finally presented to the jury."[6] Such hearing, however, is only required if the defendant challenges the voluntariness of the statement and objects to its admission.[7] As we have noted, "[d]ue process does not require a voluntariness hear-

---

[4] See id. at 556-557.

[5] We are uncertain of the relevance of this evidence. It does not appear that the robbery involved use of a car.

[6] (Punctuation and emphasis omitted.) *McNair v. State*, 190 Ga. App. 412, 413 (2) (379 SE2d 424) (1989).

[7] See *Hudson v. State*, 250 Ga. 479, 485 (6) (299 SE2d 531) (1983); *McNair*, supra.

ing absent some *contemporaneous* challenge to the use of the confession."[8]

Given Richardson's admission at trial that he witnessed the robbery, his denial to police that he knew anything about the incident arguably undermined his credibility before the jury. Assuming, without deciding, that such denial could be considered incriminating,[9] we find that Richardson waived any right to a *Jackson-Denno* hearing as to this particular statement.

Richardson never objected to the admission of the denial or asserted that it was involuntary. We recognize that he asked for a *Jackson-Denno* hearing when the trial court, on its own accord, subsequently stopped Waters' testimony and suggested that a hearing should be held before the prosecution "[went] into any statements." The record shows, however, that Richardson never claimed that his denial to Waters required a hearing or was improperly admitted. And when the trial court indicated that Waters' testimony did not yet require a hearing, Richardson raised no objection. Under these circumstances, we find that Richardson did not challenge the voluntariness of his denial to Waters or object to its admission. Accordingly, the trial court committed no error as to this testimony.[10]

Similarly, the trial court did not err in failing to hold a *Jackson-Denno* hearing regarding the rebuttal evidence. A trial court need not conduct a *Jackson-Denno* hearing before admitting a custodial statement for purposes of impeachment.[11] "What is required is that the court make a determination as to the voluntariness of the statement."[12] Richardson's assertion that the trial court should have held a *Jackson-Denno* hearing relating to this impeachment testimony, therefore, lacks merit. Moreover, Richardson did not object to the testimony on this basis or otherwise challenge it as an involuntary custodial statement. Thus, he has waived any claim that the trial court improperly admitted the statement.[13]

3. Richardson further argues that the trial court erred in failing to give his requested jury instruction regarding custodial statements to law enforcement officers. Richardson's request would have

---

[8] (Punctuation omitted.) *Gamble v. State*, 235 Ga. App. 777, 783 (5) (510 SE2d 69) (1998).

[9] See *Jackson v. State*, 225 Ga. 39, 46 (6) (165 SE2d 711) (1969) (indicating that *Jackson-Denno* hearing is only required when a defendant makes an incriminating statement or a confession).

[10] See *McNair*, supra; see also *Brown v. State*, 242 Ga. App. 347, 349 (2) (529 SE2d 650) (2000) ("A party's acquiescence to the ruling of a trial court deprives the party of a right to complain of that ruling on appeal, and acquiescence can be caused by silence.").

[11] See *Robles v. State*, 277 Ga. 415, 420 (7) (589 SE2d 566) (2003).

[12] Id.

[13] See *Gamble*, supra ("[O]bjections to evidence, including confessions, may be waived through nonobjection at trial.") (punctuation omitted).

instructed the jury to resolve two questions before considering such statements: "First, was the Defendant warned of his constitutional rights, and did he clearly understand, and knowingly give up, such rights? And, secondly, was his statement clearly voluntary, and freely and willingly given?" The trial court refused to give the charge.

A trial court is not required to instruct the jury to make an independent determination regarding the voluntariness of a custodial statement "where . . . no evidence of nor claim of involuntariness appears."[14] As discussed above, Richardson neither asserted nor presented evidence that the two statements to police admitted into evidence were involuntary or otherwise violated his constitutional rights. Accordingly, the trial court did not err in rejecting this instruction.[15]

4. Finally, Richardson argues that he received ineffective assistance of counsel at trial. To prevail on this claim, Richardson "must show both that his attorney's performance was deficient and that the deficiency prejudiced him such that a reasonable probability exists that, but for the attorney's errors, the outcome of his trial would have been different."[16] Richardson cannot make this showing here.

(a) Richardson first claims that counsel was ineffective in not objecting to the admission of the two statements to police discussed in Division 2. He also asserts that counsel should have objected to the trial court's failure to hold a *Jackson-Denno* hearing regarding these statements. On appeal, however, Richardson has made no effort to show or even argue that these statements would have been suppressed had he objected to them or had a hearing been held. Accordingly, Richardson has not demonstrated that counsel's performance was deficient or prejudiced his defense.[17]

(b) Richardson also argues that trial counsel should have done more to support his claim at trial that he was mentally disabled and thus incapable of organizing the robbery. According to Richardson, counsel should have (1) tendered into evidence his school and mental health records, as well as a court-ordered mental health evaluation, and (2) should have obtained an expert to evaluate his "mental faculties."

---

[14] *Scudiere v. State*, 130 Ga. App. 477, 479 (6) (203 SE2d 581) (1973).

[15] See id.

[16] (Punctuation omitted.) *Byrd v. State*, 274 Ga. 58, 60 (2) (548 SE2d 2) (2001).

[17] See id. ("There is no showing that trial counsel was deficient for waiving a *Jackson-Denno* hearing because [the defendant] has failed to provide a meritorious basis to contest the admission of his statement to police."); *Shorter v. State*, 239 Ga. App. 625, 626 (1) (521 SE2d 684) (1999) (" 'It is not deficient to fail to file a motion which is frivolous. Even if a deficiency did result from trial counsel's failure to file a motion to suppress, [the defendant's] burden is to make a strong showing that if trial counsel had made a motion to suppress, the damaging evidence would have been suppressed.' ").

Before trial, the trial court ordered a mental evaluation of Richardson to determine his competency to stand trial and his competence at the time of the offense. Pursuant to this order, Forensic Examiner David Ethridge evaluated Richardson. Ethridge noted that Richardson had previously been diagnosed with "Schizoaffective Disorder, Intermittent Explosive Disorder, and Mild Mental Retardation." He also determined, however, that Richardson was competent to stand trial and should be held legally responsible for his actions at the time of the offense.

Richardson called Ethridge as a witness at trial. Although Ethridge noted that Richardson met the criteria for competency and criminal responsibility, he also testified that Richardson had been diagnosed with a "major mental illness," for which he takes medication, and is mildly retarded. Ethridge further testified that Richardson's school records demonstrate a history of mental retardation and an IQ score of 60. According to Ethridge, mildly retarded individuals generally will not "take positions of leadership" relative to "unimpaired peers."

Given Ethridge's testimony, we cannot discern — and Richardson has not argued — how additional evidence regarding his school records and mental health evaluation could be characterized as anything other than cumulative. Richardson thus cannot demonstrate that counsel's performance, even if deficient, prejudiced him.[18] Furthermore, Richardson has presented no evidence regarding what another evaluation of his "mental faculties" would have established. And he has not even attempted to show that, had counsel obtained such an evaluation, the outcome of the trial would have been different. Accordingly, this ineffective assistance of counsel claim lacks merit.[19]

(c) Finally, Richardson asserts that trial counsel presented a defense that conflicted with his statements to police. In particular, although Richardson denied any knowledge of the robbery to police, he and Houston testified that he was at the scene, but did not take part in the crime.

Trial counsel's decisions " 'with regard to the choice of defenses and theories to be advanced at trial, even if unwise, are deemed matters of tactic and strategy; as a matter of law, strategic decisions do not amount to ineffective assistance of counsel.' "[20] In this case, trial counsel put forward a defense that Richardson was merely present at

---

[18] See *Gibson v. State*, 277 Ga. 486, 487-488 (2) (591 SE2d 800) (2004); *Ramey v. State*, 239 Ga. App. 620, 623 (2) (521 SE2d 663) (1999).

[19] See *Madge v. State*, 245 Ga. App. 848, 851 (3) (a) (538 SE2d 907) (2000).

[20] *Fairclough v. State*, 276 Ga. 602, 605 (4) (581 SE2d 3) (2003).

the scene. Given the evidence regarding Richardson's mental deficiencies, counsel's strategy was not unreasonable.

We recognize that this defense arguably conflicted with Richardson's initial denial of any knowledge to police. Nevertheless, we agree with the trial court that counsel was not deficient in pursuing the strategy or in calling witnesses to support it.[21] As we have previously noted, " '[a]lthough another lawyer may have conducted the defense in a different manner and taken another course of action, the fact that [the] defendant and his present counsel disagree with the decisions made by trial counsel does not require a finding that defendant's original representation was inadequate.' "[22]

*Judgment affirmed. Eldridge and Adams, JJ., concur.*

DECIDED FEBRUARY 27, 2004.

*John R. Dickey*, for appellant.
*J. Thomas Durden, Jr., District Attorney, John B. Cloy, Assistant District Attorney*, for appellee.

---

[21] See id.; *Bashiri v. State*, 217 Ga. App. 400, 402 (457 SE2d 825) (1995).
[22] Id. at 401.