27612. WHITE v. THE STATE.

ARGUED DECEMBER 11, 1972 — DECIDED MARCH 15, 1973 — REHEARING DENIED MARCH 29, 1973.

*Millard C. Farmer, Jr.,* for appellant.

*Eldridge W. Fleming, District Attorney, William F. Lee, Jr.,* for appellee.

HAWES, Justice. Harry White was convicted of violating the Georgia Drug Abuse Control Act (Ga. L. 1970, pp. 462, 463; Code Ann. § 79A-9916) and sentenced to two years imprisonment and $1,000 fine. He appealed, and in this court enumerates 36 grounds of alleged error. Such facts as may be necessary to a full understanding of the rulings made will be set forth in the opinion.

■ The accused filed in the trial court challenges to the

array of the grand and petit juries and moved to quash the panel of grand jurors and panel of petit jurors. The challenges and all of accused's motions in this regard were overruled, and the rulings thereon constitute the basis of the first 12 grounds of his enumeration of errors.

Code § 59-106, as amended by Ga. L. 1968, p. 533, relating to the revision of jury lists provides that the jury commissioners of each county shall compile, maintain and revise at least bienially a jury list of intelligent and upright citizens of the county to serve as jurors. The commissioners are required to select a fairly representative cross-section of the intelligent and upright citizens of the county from the official registered voters list which was used in the last preceding general election. It further provides, "If at any time it appears to the jury commissioners that the jury list, so composed, is not a fairly representative cross-section of the intelligent and upright citizens of the county, they shall supplement such list by going out into the county and personally acquainting themselves with other citizens of the county, including intelligent and upright citizens of any significantly identifiable group in the county which may not be fairly representative thereon. After selecting the citizens to serve as jurors, the jury commissioners shall select from the jury list a sufficient number of *the most experienced, intelligent and upright citizens,* not exceeding two-fifths of the whole number, to serve as grand jurors." (Emphasis supplied). The accused contends that the language quoted, and especially that italicized, results in the exclusion of young adults ranging in age from 18 to 30 years from service on the grand jury and thereby deprives a young adult from being charged by a jury composed of his peers, since a significantly identifiable segment of the community is unrepresented on the grand jury panel as a result of such exclusion, and that the Due Process and Equal Protection Clauses of the U. S. and State Constitutions are violated by the

procedure engendered by such words. He also attacks on the same ground the provisions of Code Ann. § 59-201 relating to the qualifications of grand jurors.

Article VI, Sec. XVI, Par. II of the Constitution of the State of Georgia, 1945 (Code Ann. § 2-5102) provides: "The General Assembly shall provide by law for the selection of the most experienced, intelligent and upright men to serve as grand jurors, and intelligent and upright men to serve as travers jurors." The appellant has made no attack on the validity of this provision as respects rights guaranteed by the U. S. Constitution. When the Constitution of the State of Georgia of 1945 was voted on and adopted by the people of this state, this provision was a part thereof. The people of the State of Georgia have not seen fit to change this provision since its adoption in 1945. It clearly sanctions, if indeed it does not command, the requirements of Ga. L. 1968, p. 533 (Code Ann. § 59-106), and of Code Ann. § 59-201. This court is unwilling to say that it is not within the power of the people of this state to fix qualifications of intelligence, character and experience in order for persons to be selected to serve on grand and petit juries. It is inherent in the system that discretion to make judgments as to those persons meeting those qualifications must be reposed somewhere. Our legislature has seen fit to vest a panel of jury commissioners with this authority. The jury commissioners in this case, so far as appears, were appointed according to law. The standards of intelligence, uprightness and experience are not violative of the Constitution of this State and do not violate the Equal Protection and Due Process Clauses of the U. S. Constitution.

Furthermore, it cannot be said that the requirement that the jury commissioners select the most experienced from the jury list to make up the grand jury box necessarily results in the rejection of young adults. Whether this is so depends, at least in some measure, on

the way in which the law is administered.

■ With respect to the contention of de facto discrimination by the jury commissioners in the selection of individuals to be placed on the jury list, it is sufficient to say that appellant did not introduce evidence demanding the conclusion of de facto discrimination. No question is presented as to the standing of appellant, a white male 24 years of age, to raise the question as to discrimination against negroes and women. Any doubt as to this has clearly been laid at rest by the recent decision of the Supreme Court of the United States in Peters v. Kiff, 407 U. S. 493 (92 SC 2163, 33 LE2d 83). To establish de facto discrimination appellant relied principally upon a statistical analysis and comparison of the ratio of the percentage of blacks on the jury panel with the percentage of blacks in a true cross-section of the population; the percentage of women on the jury panels, with the percentage of women in a true cross-section of the population; and the percentage of young adults on the jury panels as compared with the percentage of young adults in the age bracket of 18 to 30 years in a true cross-section of the population of Coweta County. For the purpose of this decision, we may concede that the figures shown by appellant's evidence are accurate. This evidence all related to persons on the current grand jury list and the current petit jury list. While appellant did introduce in evidence one previous grand jury and petit jury list, he nowhere produced any evidence showing the number of negroes, women and young adults thereon. This is not sufficient. Purposeful discrimination is not shown by introducing evidence that as to a single grand jury or petit jury members of any large or identifiable segment of the community thereon, either negroes, women or young adults, are less in proportion than the proportion such identifiable segment bears to the population in general. Adkins v. Texas, 325 U. S. 398, 403 (65 SC 1276, 89 LE 1692). "The well settled rule is that,

given a lawfully selected panel, free from any taint of invalid exclusions or procedures in selection and from which all disqualified for cause have been excused, no cause for complaint arises merely from the fact that the jury finally chosen happens itself not to be representative of the panel or indeed of the community. There is, under such circumstances, no right to any particular composition or group representation on the jury." Frazier v. United States, 335 U. S. 497, 507 (69 SC 201, 93 LE 187).

Additionally, the appellant sought to support his contention of purposeful discrimination against the classes of persons involved, that is, negroes, women and young adults, by introducing evidence that the six jury commissioners were all men over the age of 38 and that only one of their number was a negro. He coupled this evidence with testimony of the jury commissioners to the effect that they only placed those persons on the jury list who were personally known to one or more of their number, and he argues that since the jury commission was composed as above indicated the jury commissioners would naturally tend to associate with only white males ranging generally in age from 39 to 72 years, which would exclude negroes, women and young adults in the 18 to 30 year age bracket from selection as prospective jurors since such persons did not fall within the category of persons likely to be known personally to the jury commissioners. This argument is not tenable. In the first place, we have carefully examined the testimony of the jury commissioners and it is clear that their testimony falls far short of a showing that it was their unvarying practice to put on the jury list only those persons known to them previously. Their testimony shows at most that it was their practice for one or more of the commissioners to try to become knowledgeable about an individual before placing his or her name on the list, but no one of them testified that they *never* placed the name of a person on the jury list whom they did not know. Finally, all of

the jury commissioners testified unequivocally that they made no conscious effort to exclude anyone on account of race, sex or age, and that they simply tried to get the best qualified persons on the list. In view of this evidence, it cannot be said that the finding by the trial judge that there had been no de facto discrimination in making up the jury list was unauthorized. It follows that the appellant's grounds of enumerated error numbered 1 through 12 are without merit.

■ In grounds 13 through 23 of the appellant's enumeration of errors, complaint is made of the failure of the court to take remedial action and of the refusal of the court to sustain objections and motions for mistrial by counsel for the accused on account of alleged improper remarks by the district attorney in his closing argument to the jury. We have carefully read and considered the transcript of the argument and the objections and colloquy relating thereto as it affects these grounds of enumerated errors. Appellant characterizes the argument as improper, inflammatory, prejudicial and in flagrant disregard of the proper scope of argument, and as containing repeated inflammatory and unwarranted remarks going beyond mere advocacy and bordering on persecution. However, without burdening this opinion by quoting the exact language or by detailing the nature of the argument objected to, it is sufficient to say that we do not find the argument to have been as characterized by the appellant. Many of the objections lodged by counsel for the accused and motions for mistrial are so general in nature as to make it impossible to relate them to all of the grounds of enumerated error insisted on by appellant, and many of the complaints relating to the argument of counsel and non-action by the trial court must fall before the well recognized rule that "a party cannot during the trial ignore what he thinks to be an injustice, take his chance on a favorable verdict, and complain later." *Joiner v. State,* 208 Ga. 435, 438 (67 SE2d 221); *Moore v.*

*State,* 222 Ga. 748, 755, (152 SE2d 570), and cits.; *Foster v. State,* 230 Ga. 186. This latter ruling applies specifically to grounds 13, 16, 17, 18, 20 and 22.

In ground 21, appellant complains that a specified argument of the district attorney was an attempt to do by indirection that which he had been forbidden by the court to do directly, that is, to impeach his own witness. We have carefully read the testimony of the witness to which the argument objected to in this ground relates. It is apparent from a reading of this testimony that the witness was not entirely friendly to the case sought to be made by the state, and we think that the conclusions which the district attorney sought to draw in his argument and as complained of in ground 21 of the enumeration of errors were legitimate and not beyond the bounds of logic.

The statement of the court in overruling one of the objections lodged by counsel for the accused to the argument that "the court finds nothing wrong with the statement," was not ground for a mistrial. The remaining grounds, to wit, numbers 14, 15 and 19, are either not specifically argued and insisted upon by the appellant or are wholly without merit. None of these grounds is cause for a reversal.

■ Appellant contends in connection with grounds of enumerated error 24 and 25 that the state failed to establish the chain of custody of the drugs allegedly purchased from the accused and tested by one of the witnesses who was a toxicologist with the State Crime Laboratory and who testified as to the results of tests run on the items so purchased. Appellant invokes the rule enunciated by the Court of Appeals in *Pittman v. State,* 110 Ga. App. 625, 627 (139 SE2d 507), and followed and explained in *Starks v. State,* 113 Ga. App. 780 (1) (149 SE2d 841). The rule enunciated in *Pittman* was with reference to blood samples, and as was explained in *Starks,* is based on the impossibility of identifying by

observation alone a particular blood sample as being that taken from the person in question and in distinguishing it by mere observation from any other blood sample. It undoubtedly is true that the difficulty in distinguishing by mere observation one capsule containing pink powder from any other similar capsule containing pink powder, or one vial containing a clear liquid from any other vial containing a clear liquid, is no less than the difficulty in distinguishing two different blood samples, and that the rule with respect to evidence of chain of possession from the receipt of questioned capsules or vials by the investigating officer to the performance of tests thereon should be just as rigid as the rule with respect to blood samples. However, in this case the witness Gary Garner testified as to the circumstances under which he acquired the capsules and the other items subsequently delivered to the State Crime Laboratory and tested by it. He testified on direct examination that, "This evidence was turned into the State Crime Lab. on the twenty-third of February." The toxicologist, Betty Ann Walker, who ran the tests on the substances and issued the report of the crime laboratory, testified that she received the items from the witness Garner and that she ran tests on the items which had been turned over to her by him. In the absence of something to refute the conclusory statements of these witnesses, this testimony was sufficient to authorize the jury to find that Garner kept the items purchased from the accused on February 23rd in his possession at all times until he delivered them to the witness Walker. Counsel for the appellant nowhere points out that this testimony was in any way refuted. In the absence of anything further, it was certainly sufficient to meet the requirements laid down in *Pittman v. State,* 110 Ga. App. 625, supra, and in *Starks v. State,* 113 Ga. App. 780, supra. Grounds 24 and 25 are without merit.

In ground 25 of appellant's enumeration of errors

he complains because the court refused to permit his wife to sit at counsel table during the striking of the jury. He contends that she could have aided defense counsel in the exercise of his peremptory challenges because of her knowledge of the community. Generally, counsel should not be unduly hampered in the utilization of any aid which he deems will be helpful to him in striking the jury. Ordinarily, matters such as this lie within the sound discretion of the trial court, and unless that discretion is abused it will not be controlled by the appellate courts. In this case, it appears that counsel for the accused was a life-long resident of Coweta County and had practiced law in the community for several years prior to the time of this trial. The only showing which he made to the trial court in support of his request that the accused's wife be permitted to sit at counsel table was "his wife is a resident of this county and knows these members." The court denied the request. No later motion for a mistrial or other corrective action was made by counsel for the accused. No contention is made that the accused was compelled to take a juror, or jurors, that he would not otherwise have taken had his wife been at counsel table. Under these circumstances, no showing of harmful error is made and this action of the trial court under the particular circumstances of this case will not be cause for reversal.

(a) In ground 27 appellant contends that the court erred in refusing to permit counsel for the accused to question each prospective juror as to his or her age. This contention obviously relates to the contention of the accused dealt with in divisions 1 and 2 respecting the exclusion from the panel of young adults: As we interpret the provisions of Code § 59-705, as re-enacted by Ga. L. 1951, pp. 214, 215, this section permits counsel the broadest of latitude in questioning the jury as to any matter or circumstance indicating any inclination leaning or bias which the jurors might have respecting

the subject matter of the suit or counsel or parties thereto. See *McNeal v. State,* 228 Ga. 633, 635 (187 SE2d 271). Like the matter dealt with in the preceding paragraph, the limitation to be placed upon counsel in their questioning of the jury on their voir dire under this Code section must inevitably lie largely within the sound discretion of the trial court, and the appellate courts should not interfere with the exercise of that discretion unless it is shown to have been manifestly abused. In this case, it is not apparent that the age of the prospective jurors was a relevant circumstance indicating any inclination, leaning or bias, which the jurors might have had respecting the subject matter of the case or counsel of the parties thereto. We, therefore, hold that the trial court did not abuse its discretion in refusing to permit counsel for the accused to ask the prospective jurors their age.

■ The accused tendered to the court, and filed on the day the case was sounded for trial, a detailed "motion to compel disclosure" in which he sought the statements of all persons made in connection with the subject matter of the case whom the state did not intend to call at trial; memoranda or summaries of oral statements made to any agent of the state by any person in connection with the subject matter of the case whether made in writing or signed or approved by the witness and without regard to whether the statement related to the subject matter of his direct testimony as a witness at the trial; the stenographic recording or transcription of any oral statement made by one person to an agent of the state in connection with the case; the statements of persons or memoranda of recordings of any oral statements of any person whether or not made to an agent of the state; any memoranda, documents or statements used by the state during the investigation of the case; the names and addresses of all persons having knowledge of the facts of the case; a summary of the criminal records of all persons

which the state intended to call at trial; all reports and memoranda prepared on behalf of the state or otherwise in connection with the investigation of the case; written or recorded statements, or a summary of any statement made by the defendant or copies of such statements; and the results of any reports of any scientific or other tests, analyses, experiments, or studies made in connection with the instant case, or copies of those reports. The trial court overruled that motion and appellant excepts thereto in ground 28 of his enumeration of errors. As pointed out by this court in *Walker v. State,* 215 Ga. 128, 131 (109 SE2d 748), the Constitution of this State in Art. I, Sec. I, Par. V (Code Ann. § 2-105) guarantees one accused of a crime the benefit of counsel, a copy of the accusation, a list of the witnesses, compulsory process, and a speedy trial by an impartial jury. In that case this court said: "There is no law in Georgia that gives to the defendant in a criminal case the right to inspect the file of the solicitor general (now the district attorney) before he is put on trial." The ruling of this court in that case is controlling of the contentions of the appellant in this case. They are without merit, and the refusal of the court to grant the motion as complained of in this ground of enumerated error shows no cause for a new trial.

■ The 29th ground of enumerated error relates to the refusal of the trial court to charge the jury relating to rewards to persons furnishing information leading to the arrest and conviction of any person charged with selling dangerous drugs under the provisions of Code Ann. § 79A-703. This request did not relate to any evidence introduced in the trial of the case nor to any issue relevant to the jury's consideration and was properly refused.

Ground 34 complains of the refusal of the court to instruct the jury that it should not be influenced in reaching a verdict by anything the court may have said or done during the course of the trial. The trial court

substantially instructed the jury as to the principles embodied in Code § 81-1104. There is no longer any requirement in our law that the trial court instruct the jury in the exact language of a request even though such request may be directly applicable to a material issue in the case. See *Hardwick v. Price,* 114 Ga. App. 817, 821 (152 SE2d 905); *Seagraves v. ABCO Mfg. Co.,* 121 Ga. App. 224, 226 (173 SE2d 416). This ground of enumerated error is without merit.

Ground 35 complains of the refusal of the court to charge a timely written request on the defense of entrapment. There is no merit in this contention. The evidence showed, at most, that the narcotics agent to whom the accused sold the drugs in question afforded the accused the opportunity to commit the crime with which he was charged and did not induce or persuade him to commit it. The evidence did not, therefore, in any view, show entrapment, and the trial court did not err in refusing to charge this principle.

■ Ground 31 complains of error because the indictment was presented to the grand jury with a list of witnesses thereon, and because it was permitted to go out with the trial jury with a printed waiver of "copy of bill of indictment, list of witnesses sworn before the grand jury, and arraignment," which waiver the appellant contends he must strike or accept. Appellant contends that to require the accused to make this choice, and to permit the trial jury to inspect the indictment with this printed form thereon has a prejudicial affect on the accused. There is no merit in this contention. These are mere pro-forma matters that do not carry any implication as to the guilt or innocence of the accused one way or another.

In ground 32 appellant contends that there was no valid indictment because the court had entered a nolle prosequi on the docket. No nol pros had been entered on the indictment itself, and the mere entry of such a

notation on the docket opposite the case number, where the record shows that such entry was in error, was not cause for quashing the indictment or dismissing the prosecution. The entry on the docket is only a record of what has been done, and where it is shown that no order of nol pros was ever taken the mere entry on the docket is not sufficient to show that a judgment to that effect had been rendered. This contention is without merit.

It appears that the accused had previously been placed upon trial under the same indictment and that a mistrial had resulted. Based on that occurrence the accused filed a plea of former jeopardy. The overruling of that plea was not error and ground 36 complaining thereof shows no cause for a reversal.

Ground 33 complains because the court allowed the jurors to disperse. By the Act approved March 30, 1972 (Ga. L. 1972, p. 622) a new section was added to Chapter 59-7, said section to be numbered 59-718.1. By that enactment the legislature conferred upon the trial judge discretion to allow the jury to be separated and the members thereof dispersed in all cases except capital cases. This law was made effective July 1, 1972. The trial in this case occurred on September 11th and 12th, 1972, after the effective date of that Act. The trial court did not abuse its discretion in permitting the jury to disperse in this case.

Ground 30 complains because the court admitted "hearsay testimony" over the objection of counsel for the accused. The testimony in question was clearly admitted for the limited purpose of explaining the conduct of the witness and the jury was so instructed. This ground does not show error. *Bryant v. State,* 191 Ga. 686, 720 (13 SE2d 820).

█ The evidence authorized the verdict of "guilty" on count 2, and no error of law appears.

*Judgment affirmed. All the Justices concur, except Gunter, J., who dissents.*