No. 72–1736. WHITE *v.* GEORGIA. Appeal from Sup. Ct. Ga. dismissed for want of substantial federal question.

MR. JUSTICE BRENNAN, with whom MR. JUSTICE DOUGLAS and MR. JUSTICE MARSHALL concur, dissenting.

On the basis of *Turner* v. *Fouche,* 396 U. S. 346 (1970), I concur in the dismissal of appellant's facial attack on Georgia's jury selection statutes. However, I would treat the jurisdictional statement as a petition for certiorari in respect of the second question presented,[*] see 28 U. S. C. § 2103; *Mishkin* v. *New York,* 383 U. S. 502, 512 (1966), and to that extent set the case for oral argument.

Appellant alleges that the application by the jury commissioners of Coweta County of the Georgia jury selection statutes violated the Fourteenth Amendment in that such application resulted in blacks, women, and

---

[*]"Does systematic, intentional and discriminatory exclusion of Negroes, women and young adults age 18 to 30, from jury service, violate Appellant's rights of Due Process and Equal Protection under the Fourteenth Amendment and does disproportionate under-representation of these groups in the jury pools constitute a prima facie case of discrimination?"

young adults age 18–30 being underrepresented on the venire from which his grand and petit juries were impaneled. The relevant Georgia statutes, Ga. Code Ann. §§ 59–106, 59–201, require the county board of jury commissioners, at least biennially, to compile a jury list of "intelligent and upright citizens," who represent a fair cross section of the county, to serve as petit jurors. From this list, the commissioners are required to select the "most experienced, intelligent, and upright citizens," not exceeding two-fifths of the whole number, to serve as grand jurors.

Appellant, a white male 24 years of age, challenged the array of the grand and petit juries which indicted and convicted him, on the ground that the jury list composing the venire was compiled in an arbitrary and discriminatory manner. The jury commissioners testified that a juror was not selected for either grand or petit jury service unless the juror was known personally by at least one commissioner. Appellant argues that this selection procedure permits the jury commissioners to know the race, sex, and approximate age of every juror before the venire is selected, and that as a consequence, a clear and ready opportunity for discrimination inheres in the selection procedure. Appellant buttresses this conclusion with uncontroverted statistical evidence that the population of Coweta County is composed of 28.3% eligible blacks, 53.3% eligible women, and 26.2% eligible young adults aged 18–30. Yet, the 2,138 names placed on the petit jury list included only 10.85% blacks, 16.23% women, and 3.09% young adults. Of the 400 persons found to be the "most experienced" and placed on the grand jury list, only 14.25% were blacks, 4.5% were women, and 1.25% were young adults.

Nevertheless, the Georgia Supreme Court held that:

"With respect to the contention of de facto dis-

crimination by the jury commissioners in the selection of individuals to be placed on the jury list, it is sufficient to say that appellant did not introduce evidence demanding the conclusion of de facto discrimination." 230 Ga. 327, 331, 196 S. E. 2d 849, 853 (1973).

Although a defendant in a criminal case does not have a constitutional right to grand and petit jury arrays that represent the community in exact, mathematical proportions, the selection procedure employed must provide "a fair possibility for obtaining a representative cross-section of the community." *Williams* v. *Florida,* 399 U. S. 78, 100 (1970). "[A] State cannot, consistent with due process, subject a defendant to indictment or trial by a jury that has been selected in an arbitrary and discriminatory manner, in violation of the Constitution and laws of the United States." *Peters* v. *Kiff,* 407 U. S. 493, 502 (1972) (opinion of MARSHALL, J.).

Appellant's challenge to the racial composition of the venire appears to me to require application of the principles that guided our judgment in *Alexander* v. *Louisiana,* 405 U. S. 625 (1972). In *Alexander* petitioner introduced statistical evidence that blacks composed 21.06% of the population, but only 6.75% of the grand jury panels, demonstrating an underrepresentation of 67.9%. In addition, petitioner introduced evidence that the jury commissioners used information cards which designated the race of each potential juror. We held that petitioner's statistical evidence establishing that blacks were underrepresented, together with the evidence that the selection procedures themselves were not racially neutral, established a prima facie case of invidious racial discrimination, and thus shifted the burden of proof to the State "to rebut the presumption of unconstitutional action by showing that permissible racially neutral se-

lection criteria and procedures have produced the monochromatic result. *Turner* v. *Fouche,* 396 U. S. 346, 361 (1970); *Eubanks* v. *Louisiana,* 356 U. S. 584, 587 (1958)." *Id.,* at 632. Since the State failed to meet its burden of proof, we set aside Alexander's conviction.

Similarly, appellant's statistics here demonstrate substantial underrepresentation of blacks on the grand and petit jury venires, 49.5% and 61.7% respectively. Furthermore, there inheres in the selection procedures employed by the Coweta County jury commissioners the same fatal defect we found in the procedures employed in *Alexander, i. e.,* the procedures assure that the jury commissioner shall learn the race of every potential juror before the list is compiled. See *Avery* v. *Georgia,* 345 U. S. 559 (1953); *Whitus* v. *Georgia,* 385 U. S. 545 (1967). Thus, appellant in this case also seems to have established a prima facie case of racial discrimination, which under *Alexander* shifted to the State the burden of proof to rebut the presumption of unconstitutional action. Under *Alexander* also, the State's evidence in the form of the testimony of the jury commissioners that they made no conscious effort to exclude anyone on the basis of race, sex, or age would not appear to suffice to rebut the presumption. For in *Alexander* we held that "affirmations of good faith in making individual selections are insufficient to dispel a prima facie case of systematic exclusion. *Turner* v. *Fouche, supra,* at 361; *Jones* v. *Georgia,* 389 U. S. 24, 25 (1967); *Sims* v. *Georgia,* 389 U. S. 404, 407 (1967)." 405 U. S., at 632.

Appellant also contends that women and young adults age 18–30 were systematically and purposefully excluded from the venire from which the grand and petit jury lists were compiled. The statistical evidence indicates that women were underrepresented by 91.6% on the grand jury list, and 70.6% on the petit jury list. Young

adults were underrepresented by 95.2% on the grand jury list, and 88.2% on the petit jury list. Though *Alexander* involved racial discrimination, appellant's contention certainly presents a substantial question whether the principles of that decision should apply where any large, identifiable segment of the community is arbitrarily or discriminatorily underrepresented on the jury venire. Therefore, I would set this case for oral argument to consider both appellant's racial claims and his claims that a selection procedure which enables jury commissioners to know the sex and approximate age of potential jurors also constitutes a prima facie case of sex or age discrimination.