## 31932. YOUNG v. THE STATE.

NICHOLS, Chief Justice.

John Young was tried by a jury in the Superior Court of Bibb County and convicted of three counts of murder. As to each murder conviction, the jury found as aggravating circumstances (1) the offense of murder was committed while the offender was engaged in the commission of burglary or arson in the first degree; and (2) the offense of murder was outrageously or wantonly vile,

horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim. He was sentenced to death on each count. He is before this court on appeal and for mandatory review of the death sentence imposed.

## Summary of the Evidence

The state presented evidence from which the jury was entitled to find the following:

On the night of December 7, 1974, six elderly persons were attacked, severely beaten, kicked, and stomped in their homes in the City of Macon, Bibb County, Georgia. All lived in the same neighborhood. Three of those people pieced together a description of their assailant. The other three victims died as a result of attacks upon them.

The appellant was connected to the crimes by watches and jewelry taken during the commission of the crimes, a fingerprint, and statements to his friends that he did it. When asked if he was the one who had jumped on those people, he replied: "Yeah, man and I'm going to get me some more." When asked if they were white or black, he responded: "White." When asked: "Why, John?" he replied: "I don't know. The only thing that I am sorry is that they caught me before I got through."

The evidence will be examined in more detail as necessary in addressing the enumerations of error.

The appellant filed a special plea of insanity before trial, and on June 30, 1975, a jury returned a verdict against the special plea of insanity. The court granted a new trial on such issue, and on October 21, 1975, a second jury returned a verdict against the plea. During the sentencing phase of the trial, the appellant again presented the testimony of the psychiatrist who had performed the psychiatric examination.

## Enumerations of Error

1. The appellant was arrested December 9, 1974, indicted December 19, 1974 and counsel was not appointed until December 23, 1974. Accordingly, the challenge to the array of the grand jury filed after indictment was properly considered by the trial court where the allegations therein to the effect that the defendant had no knowledge, either actual or constructive, of the alleged illegal composition of the grand

jury prior to the time the indictment was returned. See *Estes v. State,* 232 Ga. 703, 708 (208 SE2d 806) (1974); *Wooten v. State,* 224 Ga. 106 (1) (160 SE2d 403) (1968).

While the original challenge to the composition of the grand jury included attacks based upon the exclusion of youth as well as racial discrimination, neither of these attacks has been argued in this court and are considered abandoned. If these contentions had not been abandoned, they would be without merit. Compare *White v. State,* 230 Ga. 327 (196 SE2d 849) (1973) cert. den., 414 U. S. 886 (94 SC 222, 38 LE2d 134); *State v. Gould,* 232 Ga. 844 (209 SE2d 312) (1974).

In support of the contention that the grand jury, which indicted him, was unconstitutionally constituted as a result of an underrepresentation of women, the defendant relies upon the decision of the United States Supreme Court in Taylor v. Louisiana, 419 U. S. 522 (95 SC 692, 42 LE2d 690) (1975), and *Sanders v. State,* 237 Ga. 858 (230 SE2d 29) (1976). The defendant's reliance upon these cases is misplaced. The defendant here was indicted in December, 1974. The Taylor decision was not rendered until January, 1975, and in the later decision of Daniel v. Louisiana, 420 U. S. 31 (95 SC 704, 42 LE2d 790) (1975), the United States Supreme Court held: "The decision in Taylor v. Louisiana, 419 U. S. 522, wherein it was held that the Sixth and Fourteenth Amendments require petit jurors to be selected from a source fairly representative of the community and that such requirement is violated by the systematic exclusion of women from jury panels, is not to be applied retroactively, as a matter of federal law, to convictions obtained by juries impaneled prior to the date of that decision. De Stefano v. Woods, 392 U. S. 631."

Nor does the decision of this court in *Sanders v. State,* 237 Ga. 858, supra, wherein this court applied the decision in Taylor, supra, to grand jurors selected in Georgia, aid the defendant. A review of the record in *Sanders* discloses that the grand jury indicting the defendant there was impaneled after the decision in Taylor, supra.

The decision of the Court of Appeals in *Gould v. State,* 131 Ga. App. 811 (207 SE2d 519) (1974), affirmed in part

and reversed in part (*State v. Gould,* 232 Ga. 844 (209 SE2d 312) (1974)) does not support the defendant's contention that his challenge to the grand jury should be sustained. In that case, unlike *White v. State,* supra, and the present case, there was evidence introduced showing a pattern of exclusion of persons from significantly identifiable groups. Thus, the evidence, relating to the make-up of the particular grand jury box from which the panel which indicted the defendant was drawn, would not support such contention.

As to the traverse jury which actually convicted the defendant, such jury was composed of seven men and five women. Under these circumstances it cannot be said that the appellant has been harmed by the exclusion of women at any stage of the jury selection process. The first enumeration of error is without merit.

2. The second enumeration of error complains that the trial court erred in failing to grant a pre-trial motion for change of venue because of unfavorable pre-trial publicity.

In *Coleman v. State,* 237 Ga. 84, 87, 91 (226 SE2d 911) (1976), this court held: "In considering this question this court fully recognizes the well established principle that a trial before a fair and impartial jury is a basic requirement of due process. We also recognize the right of the news media to report the factual happenings surrounding a crime and to report accurately a trial based thereon. To restrict the right of the press in this regard would be inconsistent with the First Amendment and with the right of the public to a free flow of information. This right of the media, however, must not be allowed to interfere with the judicial calm which must surround a trial free from emotionalism and sensationalism. The courts have attempted to balance these equities. It was stated in United States v. McNally, 485 F2d 398, 403 (8th Cir., 1973), 'Just because, however, there has been widespread or even adverse publicity is not in itself grounds to grant a change of venue. As stated in Irvin v. Dowd, 366 U. S. 717, 722, 81 SC 1639, 1642, 6 LE2d 751 (1961), an important case draws public attention through "swift, widespread and diverse means of communication" and hardly any prospective juror "will not have formed

some impression or opinion as to the merits of the case." The proper test is whether the prospective juror "can lay aside his impression or opinion and render a verdict based on the evidence presented in court." Irvin v. Dowd, supra, at 723.' . . . 'The test as to whether unfavorable newspaper publicity had so prejudiced a case against one accused of a crime that a fair trial cannot be had is whether the jurors summoned to try the case have formed fixed opinions as to the guilt or innocence of the accused from reading such unfavorable newspaper publicity. . .' *Krist v. Caldwell*, 230 Ga. 536 (198 SE2d 161) (1973)."

The trial transcript clearly shows that there were no such preconceived opinions as to the guilt or innocence of the appellant here. Ten of the twelve jurors stated at the trial on voir dire (either) that they had not read or heard any pre-trial publicity or, if they had, they were not influenced by it. Of the two remaining jurors, one stated that he would require the state to prove the defendant's guilt beyond a reasonable doubt. Questioning of the other remaining juror on voir dire fails to show that she had any fixed opinion as to the guilt or innocence of the appellant. In addition, the entire panel of prospective jurors was asked the following questions on voir dire: (1) "[H]ave you any prejudice or bias resting on your mind either for or against this defendant?" (2) "Is your mind perfectly impartial between the State and the accused?" Only one prospective juror answered the first question in the affirmative, and he was excused for cause. There was no negative response to the second question.

Most of the media coverage surrounding this case was during the month of December, 1974. The trial was not begun until January 5, 1976, almost 13 months later. At trial, the appellant's counsel conceded to the trial court, during the hearing of a different motion, that after extensive research, he did not feel that there was sufficient ground for a change of venue under legal precedent in this state, but that he was going to file a change of venue motion only because appellant had requested him to do so.

The appellant's motion for a change of venue was properly denied by the trial court, and therefore, the second enumeration of error is without merit.

3. The third enumeration of error alleges: "The trial court erred in failing to dismiss the indictment against the appellant and declare the death penalty unconstitutional under the Constitution of the State of Georgia and the Constitution of the United States of America."

Both this court and the Supreme Court of the United States have considered this contention and upheld the constitutionality of the Georgia statute. Nothing presented here persuades us to change that opinion. *Coley v. State,* 231 Ga. 829 (204 SE2d 612) (1974); Gregg v. Georgia, 428 U. S. 153 (96 SC 2909, 49 LE2d 859) (1976). This enumeration of error is without merit.

4. The fourth enumeration of error alleges that: "The trial court erred in charging the jury on flight in that there was not sufficient evidence in the case to require the giving of said charge."

The evidence presented at the trial indicated that shortly before leaving the neighborhood where the crimes were committed, the appellant was confronted with the fact that the crimes had been discovered. His friends, after connecting his bloody clothes with disturbances down the street, asked him if he had done it and he conceded he had. Within a matter of hours, the appellant left the city, went to the neighboring town of Milledgeville, and upon arrival there, told a relative that he had robbed someone, that the police would probably be there that night and, because of this, he planned to arise early and go to Atlanta.

The transcript contains ample evidence to authorize the charge on flight. The trial judge was careful to couch the language of the charge so as to instruct the jury that it must first determine whether any sort of flight had, in fact, occurred. He then instructed the jury that it must determine whether or not any inference of guilt should be drawn. Finally, the jury was charged that if the flight, if any, was for some reason other than a sense of guilt, then no inference harmful to the defendant should be drawn.

Under the circumstances, the charge of the court was both appropriate and legally correct. *Allen v. State,* 137 Ga. App. 302 (223 SE2d 495) (1976). The fourth enumeration of error is without merit.

5. The fifth enumeration of error alleges: "The trial court erred in failing and refusing to give appellant's request to charge on intoxication."

At the conclusion of the trial judge's charge to the jury and after the jury had retired, trial counsel for the appellant prepared a charge on intoxication and requested the court to bring the jury back and recharge the jury on that particular subject as follows: "I further charge you that while voluntary intoxication is not a defense to a crime, that you, the jury, should consider the evidence as to whether the defendant was intoxicated at the time the alleged crimes occurred in determining if the defendant had the necessary intent to commit the crimes alleged."

The appellant's contention must fail for a number of reasons.

First, Code Ann. § 70-207 (b) provides that: "In all cases, at the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may present to the court written requests that it instruct the jury on the law as set forth therein. . . The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury. . ." Appellant's request to charge was not presented to the trial court until after the jury had retired. To have given the requested charge at that time would have denied appellee an opportunity to argue the point in closing arguments, which is clearly contrary to the purpose of the requirements of Code Ann. § 70-207 (b) that the court inform counsel of its proposed action upon the requests before closing arguments are given.

Second, if the request had been timely, it is without merit under the law because "Voluntary intoxication shall not be an excuse for any criminal act or omission." Code Ann. § 26-704 (Ga. L. 1968, pp. 1249, 1270). "The law presumes every homicide to be malicious until the contrary appears from facts or circumstances showing excuse or justification." *Wiggins v. State,* 221 Ga. 609 (146 SE2d 294) (1965); *Meadows v. State,* 230 Ga. 471, 472 (197 SE2d 698) (1973).

The request to charge was therefore properly denied and the fifth enumeration of error is without merit.

6. The sixth enumeration of error alleges: "The trial court erred in failing to command the jury to return to the jury room and render a unanimous verdict following the sentencing phase of the appellant's trial."

The occurrence on which the appellant bases this enumeration of error occurred during a jury poll after the jury had recommended the death penalty on all three counts. The juror was asked: "Q. Are these your verdicts? A. Yes. Q. Were they freely and voluntarily entered? A. They were voluntarily, but with reservations. Q. Are they still your verdicts? A. They are still my verdicts."

The indication of "reservations" does not prevent the verdict from being unanimous. The requirement is that a juror agree to a verdict. In this case, the juror on two occasions answered affirmatively that the verdict was his in the jury room and still his upon being polled. *Person v. State,* 235 Ga. 814 (221 SE2d 587) (1976); *Parker v. State,* 81 Ga. 332 (6 SE 600) (1888); *Hill v. State,* 64 Ga. 453 (1880).

All of the jurors, including this one, concurred in the imposition of the death penalty, making a unanimous verdict. Appellant's sixth enumeration of error is without merit.

7. The seventh enumeration of error alleges he was denied a fair trial inasmuch as he did not have effective assistance of counsel in the trial of the case.

Appellant's counsel at trial filed innumerable motions and special pleas prior to trial and ably supported them with argument. During the trial, counsel made additional motions, interposed objections, and conducted a thorough and sifting cross examination of the witnesses called by the state. His trial counsel was a member of the Georgia Bar.

In *Pitts v. Glass,* 231 Ga. 638, 639 (203 SE2d 515) (1974), this court quoted approvingly from MacKenna v. Ellis, 280 F2d 592, 599 (5th Cir. 1960): "We interpret the right to counsel as the right to effective counsel. We interpret counsel to mean not errorless counsel, and *not counsel judged ineffective by hindsight,* but counsel reasonably likely to render *and rendering* reasonably effective assistance." (Emphasis supplied.) Appellant's final enumeration of error is without merit.

Sentence Review

We have reviewed the sentence as required by Ga. L. 1973, p. 159 et seq. (Code Ann. § 27-2537 (c) (1-3)) as we have in each case involving a death penalty under this statute, considering the aggravating circumstances found by the jury, the evidence concerning the crimes and the defendant. We conclude that the sentence of death imposed on John Young was not imposed under the influence of passion, prejudice or any other arbitrary factor.

As to each count of murder, the jury found as statutory aggravating circumstances: (1) The offense of murder was committed while the offender was engaged in the commission of burglary or arson in the first degree; Code Ann. § 27-2534.1 (b) (2), and (2) The offense of murder was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim. Code Ann. § 27-2534.1 (b) (7).

The jury's finding is supported by the evidence.

In reviewing the death penalty in this case, we have considered the cases appealed to this court since January 1, 1970, in which a death or life sentence was imposed, and we find the similar cases listed in the appendix support affirmance of the death penalty.

John Young's sentence to death for these murders is not excessive or disproportionate to the penalty imposed in similar cases considering both the crimes and the defendant.

*Judgment affirmed. All the Justices concur, except Hill, J., who concurs in the judgment only.*

ARGUED FEBRUARY 15, 1977 — DECIDED MAY 12, 1977 — REHEARING DENIED MAY 26, 1977.

*James, Shipp & Wilcox, Tommy Day Wilcox,* for appellant.

*Walker P. Johnson, Jr., District Attorney, Tommy Hinson, Graham A. Thorpe, Assistant District Attorneys, Arthur K. Bolton, Attorney General, Daryl A. Robinson, Staff Assistant Attorney General,* for appellee.

APPENDIX.

Similar cases considered by the court: *Henderson v. State,* 227 Ga. 68 (179 SE2d 76) (1970); *Pass v. State,* 227 Ga. 730 (182 SE2d 779) (1971); *Watson v. State,* 229 Ga. 787 (194 SE2d 407) (1972); *Callahan v. State,* 229 Ga. 737 (194 SE2d 431) (1972); *Sirmans v. State,* 229 Ga. 743 (194 SE2d 476) (1972); *Scott v. State,* 230 Ga. 413 (197 SE2d 338) (1973); *Whitlock v. State,* 230 Ga. 700 (198 SE2d 865) (1973); *Kramer v. State,* 230 Ga. 855 (199 SE2d 805) (1973); *Bennett v. State,* 231 Ga. 458 (202 SE2d 99) (1973); *Howard v. State,* 231 Ga. 186 (200 SE2d 755) (1973); *Hunter v. State,* 231 Ga. 494 (202 SE2d 441) (1973); *Morgan v. State,* 231 Ga. 280 (201 SE2d 468) (1973); *House v. State,* 232 Ga. 140 (205 SE2d 217) (1974); *Gregg v. State,* 233 Ga. 117 (210 SE2d 659) (1974); *Floyd v. State,* 233 Ga. 280 (210 SE2d 810) (1974); *Chenault v. State,* 234 Ga. 216 (215 SE2d 223) (1975); *Smith v. State,* 236 Ga. 12 (222 SE2d 308) (1976); *Mason v. State,* 236 Ga. 46 (222 SE2d 339) (1976); *Coleman v. State,* 237 Ga. 84 (226 SE2d 911) (1976); *Birt v. State,* 236 Ga. 815 (225 SE2d 248) (1976); *Isaacs v. State,* 237 Ga. 105 (226 SE2d 922) (1976); *Banks v. State,* 237 Ga. 325 (227 SE2d 380) (1976); *Dungee v. State,* 237 Ga. 218 (227 SE2d 746) (1976).