**John YOUNG, Petitioner-Appellant,**

v.

**Walter D. ZANT, Warden, Georgia Diagnostic and Classification Center, Respondent-Appellee.**

No. 83–8557.

United States Court of Appeals, Eleventh Circuit.

March 8, 1984.

August F. Siemon, Atlanta, Ga., for petitioner-appellant.

Susan V. Boleyn, Asst. Atty. Gen., Atlanta, Ga., for respondent-appellee.

Before GODBOLD, Chief Judge, RONEY and KRAVITCH, Circuit Judges.

RONEY, Circuit Judge:

Convicted of murder and sentenced to death in Georgia, John Young appeals the denial of habeas corpus relief on the following grounds: (1) he was indicted by an unconstitutionally composed grand jury; (2) he received ineffective assistance of counsel and was wrongfully denied an evidentiary hearing on the ineffective assistance issue; and (3) mitigation evidence was improperly excluded from the sentencing portion of his trial. We affirm.

The evidence upon which petitioner was convicted and sentenced showed that he brutally beat three elderly persons to death in the course of burglarizing their homes. Petitioner was connected to the murders by the victims' watches and jewelry which were found in his possession, a fingerprint, and his own incriminating statements.

Petitioner's conviction and death sentence in the Superior Court of Bibb County, Georgia, were affirmed by the Supreme Court of Georgia. *Young v. State,* 239 Ga. 53, 236 S.E.2d 1, *cert. denied,* 434 U.S. 1002, 98 S.Ct. 648, 54 L.Ed.2d 499 (1977). After exhausting state collateral remedies, petitioner filed this application of habeas corpus relief in federal district court.

*Unconstitutionally Composed Grand Jury*

■ Georgia's "opt-out" law for women rendered its juries unconstitutional under *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). *Machetti v. Linahan,* 679 F.2d 236 (11th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 763, 74 L.Ed.2d 978 (1983) (involving Bibb County jury selection system). The critical issue here as to petitioner's contention that his grand jury was unconstitutionally composed is the effect of *Daniel v. Louisiana,* 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975), which held that *Taylor* should not be retroactively applied.

The timing of this case and those cases is important. Petitioner was indicted on December 19, 1974, a little over a month prior to the *Taylor* decision. *Daniel* came down six days after *Taylor*. Petitioner first moved to dismiss the indictment because of an illegal grand jury array on January 16, 1975, five days before *Taylor* was decided. This motion was renewed on February 26, 1975. The trial court denied these motions on July 25, 1975. Subsequently, the Georgia Supreme Court held that petitioner's challenge to the grand jury array had been timely even though it came after the indictment because petitioner alleged he had no knowledge of the asserted illegal composition of the array prior to his indictment. *Young v. State,* 239 Ga. 53, 236 S.E.2d 1, *cert. denied,* 434 U.S. 1002, 98 S.Ct. 648, 54 L.Ed.2d 499 (1977). Although the Georgia Supreme Court did not acknowledge that petitioner challenged the grand jury on two different dates, we assume for purposes of this appeal that the court considered both motions timely.

Reading one sentence in *Daniel* would indicate that since a timely objection was made after *Taylor,* petitioner's claim was not foreclosed.

> The question is whether our decision in *Taylor v. Louisiana* is to be applied retroactively to other defendants whose opportunity to raise a timely objection to the jury-selection procedures had passed as of the date of our decision in *Taylor.*

420 U.S. at 32, 95 S.Ct. at 705. In our judgment, however, applying the spirit of the decision of *Daniel,* as reflected by later language in the case, it was not intended that a state have to redo something that had already been completed at the time the *Taylor* objection was made. Daniel had made the precise objection that Taylor had made, and his case was on direct review in the Supreme Court at the same time as Taylor's. The Court could have granted *Daniel* relief without opening prior convictions to collateral attack. But it did not. Only the luck of getting there slightly before Daniel, gave Taylor the benefit of the decision. Daniel was foreclosed, largely on the judgment of the Supreme Court that, although unconstitutional, the juries thus drawn did

not necessarily render the state proceedings unfair. By its refusal to give Daniel the benefit of the *Taylor* decision, it is quite apparent that the Court did not intend that the states would have to reconstitute grand juries and reindict prisoners who had been indicted by a grand jury drawn, and whose work in this case had been completed, prior to *Taylor.* The *Daniel* Court reasoned:

> In *Taylor,* as in *Duncan* [*v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968)], we were concerned generally with the function played by the jury in our system of criminal justice, more specifically the function of preventing arbitrariness and repression. In *Taylor,* as in *Duncan,* our decision did not rest on the premise that every criminal trial, or any particular trial, was necessarily unfair because it was not conducted in accordance with what we determined to be the requirements of the Sixth Amendment. In *Taylor,* as in *Duncan,* the reliance of law enforcement officials and state legislatures on prior decisions of this Court, such as *Hoyt v. Florida,* 368 U.S. 57 [82 S.Ct. 159, 7 L.Ed.2d 118] (1961), in structuring their criminal justice systems is clear. Here, as in *Duncan,* the requirement of retrying a significant number of persons were *Taylor* to be held retroactive would do little, if anything, to vindicate the Sixth Amendment interest at stake and would have substantial impact on the administration of criminal justice in Louisiana and in other States whose past procedures have not produced jury venires that comport with the requirement enunciated in *Taylor.*

420 U.S. at 32–33, 95 S.Ct. at 705–706. In our judgment, the requirement of reindicting all prisoners untried when *Taylor* and *Daniel* were decided, would have a sufficiently "substantial impact on the administration of justice" in Georgia to dictate that *Taylor* should not be applied to this case, under the teachings of *Daniel.* There is also no contention here that underrepresentation of women on Young's grand jury rendered that jury unfair to him in this case.

### Ineffectiveness of Counsel

Petitioner's argument that he was denied effective assistance of counsel at his trial has three prongs: first, he asserts he was denied a full and fair hearing in his state court habeas corpus proceeding because the state would not provide him funds to find and bring his trial attorney to testify; second, because of this failure in the state courts, the district court should have funded an investigation to get the attorney to his federal proceeding; and third, in any event, the record shows the district court's finding against him on the merits of his claim was in error.

We have previously noted that the failure of a state court to provide financial assistance for investigation purposes in habeas corpus cases does not present a constitutional issue. *Willis v. Zant,* 720 F.2d 1212, 1215 n. 5 (11th Cir.1983). *See Brooks v. Francis,* 716 F.2d 780, 795 (11th Cir.1983). Habeas corpus petitioners are not even constitutionally entitled to state-paid counsel. *Norris v. Wainwright,* 588 F.2d 130, 132 (5th Cir.), *cert. denied,* 444 U.S. 846, 100 S.Ct. 93, 62 L.Ed.2d 60 (1979); *Ardister v. Hopper,* 500 F.2d 229, 233 (5th Cir.1974); *see Ross v. Moffitt,* 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974); *but see Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) (either access to a library or legal assistance must be provided state prisoners).

In any event, the state court had before it transcripts from judicial proceedings in which petitioner's trial attorney, Charles Marchman, did address the two points asserted on the merits of the ineffectiveness issue here. Petitioner's first claim is that Marchman's use of drugs affected his ability to present an effective defense for petitioner. Petitioner asserts that Marchman's conviction for possession of marijuana shortly after petitioner's trial ended substantiates his claim. Marchman testified about his drug usage at an earlier state habeas corpus proceeding involving a different capital defendant. As in the instant case, the issue there was ineffective assistance of counsel. Marchman testified that he had had a drug problem but that he felt it had never interfered with his practice of law and that federal investigators had reached the same conclusion. A transcript of this hearing was presented to the state court.

Petitioner's second claim was that he gave Marchman names of alibi witnesses but Marchman failed to investigate this line of defense. At two pretrial hearings on petitioner's sanity, however, Marchman testified that he was impeded in his defense of petitioner because the petitioner claimed to have no memory of the time period when the crimes he was accused of committing occurred. Petitioner testified at those hearings that he had no recall of the critical period. Transcripts of the hearings were part of the trial record. Under these circumstances, the district court did not err in holding that petitioner had a full and fair hearing on this ineffectiveness claim in the state habeas corpus proceeding.

Petitioner has suggested no evidence that indicates Marchman could add anything to the state record which would be noncumulative. The district court was correct in ruling on the basis of the record alone. *Baldwin v. Blackburn,* 653 F.2d 942, 946–47 (5th Cir.1981), *cert. denied,* 456 U.S. 950, 102 S.Ct. 2021, 72 L.Ed.2d 475 (1982).

This case is markedly different from *Thomas v. Zant,* 697 F.2d 977 (11th Cir. 1983) relied upon by petitioner, where the Court held that the direct testimony of the trial attorney would not be merely cumulative as to whether the lack of preparation was the determining factor in handling the sentencing portion of petitioner's trial.

A federal district court, unlike a Georgia state court, can provide funds for investigation to habeas corpus petitioners. 18 U.S.C.A. § 3006A(g); *see Johnson v. Zant,* 249 Ga. 812, 295 S.E.2d 63 (1982). The granting of funds, however, is committed to the discretion of the trial judge. It is perfectly appropriate for a district court to deny funds when the state court has ruled on the basis of an adequate record.

Petitioner claims this record proves ineffective assistance. Petitioner sub-

mitted a personal affidavit in the state habeas corpus proceeding in which he claimed that Marchman took "huge grey pills" during the trial and failed to investigate alibi witnesses which he told him about. The court apparently disbelieved petitioner's allegation concerning alibi witnesses. This conclusion receives overwhelming support from the transcripts of petitioner's pre-trial sanity hearings. In those hearings, both petitioner and Marchman testified that petitioner had no memory of the period during which the murders were committed. The record also fails to support any claim that Marchman's handling of the trial was affected by his drug usage. Marchman presented a vigorous and capable defense. Petitioner has failed to carry his burden of establishing that counsel's representation was defective to the point that he was constitutionally ineffective. *Jones v. Estelle,* 632 F.2d 490, 492 (5th Cir.1980), *cert. denied,* 451 U.S. 916, 101 S.Ct. 1992, 68 L.Ed.2d 307 (1981).

*Exclusion of "Mitigating" Evidence*

Petitioner contends that evidence alleged to be mitigating was wrongfully excluded during the sentencing portion of his trial. A psychiatrist who had examined petitioner testified he thought petitioner could be rehabilitated. He was not allowed to tell the jury what type of rehabilitative program he would recommend.

A defendant is entitled to submit as mitigating for capital sentencing purposes evidence relevant to "any aspect of a defendant's character or record...." *Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978). The courts may exclude evidence irrelevant to defendant's character. *Id.* at 604 n. 12, 98 S.Ct. at 2965 n. 12; *e.g., Shriner v. Wainwright,* 715 F.2d 1452, 1456 (11th Cir.1983) (description of electrocution not relevant to character); *Harris v. Pulley,* 692 F.2d 1189, 1203–04 (9th Cir.1982), *rev'd on other grounds,* —— U.S. ——, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984) (description of execution in gas chamber not relevant to character). While a person's ability to be rehabilitated may be relevant character evidence, testimony as to the type of rehabilitative program is too attenuated to make its exclusion constitutional error, especially in view of the broad discretion given trial judges as to relevancy determinations. 1 C. Torcia, *Wharton's Criminal Evidence* § 151 at 277 (1972). There was no attempt by the state to suggest that the sentence should turn on defendant's possible future conduct, an issue that might possibly make relevant the rehabilitative procedures that would seek to alter that conduct. *Wainwright v. Goode,* —— U.S. ——, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983).

AFFIRMED.